204 N.J. Super. 288 (1985)
498 A.2d 787
GUY BUSSELL, PLAINTIFF-RESPONDENT,
v.
DEWALT PRODUCTS CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 11, 1985.
Decided October 8, 1985.
*289 Before Judges KING, SIMPSON and SCALERA.
Evans, Koelzer, Osborne & Kreizman, attorneys for appellant (Clarkson S. Fisher, Jr., on the briefs).
*290 Pellettieri, Rabstein and Altman, attorneys for respondent (Andrew M. Rockman, of counsel Bruce H. Stern, on the brief).
The opinion of the court was delivered by SIMPSON, J.A.D.
In this product liability personal injury action, defendant saw manufacturer appeals from a $792,000 judgment entered upon a jury verdict on liability and damages, and denial of its motions for judgment notwithstanding the verdict, a new trial, and remittitur. On June 27, 1980 plaintiff, then age 19, was working for Suburban Fence Company. He was operating a radial saw manufactured by defendant and making dog ears for fence posts. A co-employee bumped his left arm, causing his left hand to go into the saw and resulting in amputation of the thumb and first three fingers of his left hand. Plaintiff sued the manufacturer on a theory of strict liability in tort alleging that the saw was defective when made and sold because it lacked a lower blade guard.
On the liability issue there was a conflict of expert testimony. Medical bills were stipulated as reasonable and necessary in the amount of $24,543.29. A psychiatrist, hand injury specialist, employability expert, and economist supported plaintiff's claims as to pain and suffering, permanent disability, and future loss of income. Defendant produced no witnesses as to damages and relied solely on cross-examination and legal argument. The contentions on appeal are that:
(1) The verdict as to causation was against the weight of the evidence.
(2) The economic testimony as to future loss of earnings was pure speculation.
(3) The economic testimony as to (2) should have been stricken because it did not address the tax consequences of an award for lost earnings.
*291 (4) The verdict was excessive.
(5) The trial court failed to charge the jury that an award would not be subject to income taxes.

I
The scope and standard of our review of the denial of defendant's motions is essentially similar to the standard governing the trial judge as to jury verdict review, viz: There should be no reversal unless it clearly appears that there was a miscarriage of justice under the law. R. 2:10-1; Dolson v. Anastasia, 55 N.J. 2, 6-8 (1969); Carrino v. Novotny, 78 N.J. 355, 360 (1979); Baxter v. Fairmont Food Co., 74 N.J. 588, 595-601 (1977). We have carefully reviewed the record and the arguments in support of defendant's contentions (1) through (3) and are satisfied that the evidence in support of the jury verdict is not insufficient, the denial of the motions by the trial court did not constitute a manifest denial of justice, and all issues of law raised are clearly without merit. R. 2:11-3(e)(1)(B), (C) and (E).

II
Contentions (4) and (5) are interrelated and in our view there was trial error as to (5) of such a magnitude as to require a new trial as to damages. At the charge conference the judge indicated he would advise the jury that a damages award would not be taxable, and both counsel agreed. This is correct under the Internal Revenue Code as to federal income tax, 26 U.S.C.A. § 104(a)(2) and as to the New Jersey Gross Income Tax, N.J.S.A. 54A:6-6b. Unfortunately, the judge forgot to so advise the jury and defense counsel immediately requested such a supplemental instruction. Although there was a supplemental charge on some other points, the judge again failed to advise the jury that any award would be free of income taxes. Under *292 these circumstances there are two issues for resolution: (A) whether such a charge should be given at all; and if so, (B) whether the omission was clearly capable of producing an unjust result.

(A)
In Tenore v. Nu Car Carriers, 67 N.J. 466, 495 (1975), the New Jersey Supreme Court held that in wrongful death act cases a jury must be instructed that a pecuniary loss award (which includes a deceased's projected net income after taxes) is not subject to income taxation. After thoroughly reviewing conflicting opinions on the subject, Justice Pashman explained that:
As we have pointed out above, there is a sound purpose in having the court instruct the jury that a damage award is not subject to income taxation itself. This is to prevent a jury which might think otherwise from improperly increasing the verdict to protect plaintiff from the impact of such taxes. [Id. at 495.]
In footnote 27 on page 494, however, the Tenore court specifically limited this decision to recovery under the wrongful death act and found it unnecessary to comment upon Scalise v. Central R.R., 129 N.J. Super. 303, 306-307 (App.Div. 1974) that held it would be improper in a Federal Employers' Liability Act (FELA) personal injury action to instruct a jury that an award would not be subject to federal income taxation. Scalise specifically declined to follow the contrary holding in Domeracki v. Humble Oil, 443 F.2d 1245 (3rd Cir.1971), cert. den. 404 U.S. 883, 92 S.Ct. 212, 30 L.Ed.2d 165 (1971) and noted the then conflict among the Federal Circuit Courts of Appeals. Since that time, however, the United States Supreme Court has expressly approved the rule of Domeracki and held it is error in FELA cases to refuse to instruct a jury that personal injury awards are exempt from federal income taxes. Norfolk & Western R.R. Co. v. Liepelt, 444 U.S. 490, 497, 100 S.Ct. 755, 759, 62 L.Ed.2d 689, 695-696 (1980). The rationale of the United States Supreme Court is that today's tax-conscious *293 juries may mistakenly assume that the award will be taxable and inflate the recovery to compensate for same. There is an increased risk of such overcompensation error in New Jersey where lottery and casino jackpot winnings are frequently reported in the public media with mention of federal withholding tax deductions therefrom. Although many jurisdictions uphold the refusal of trial courts to instruct a jury that personal injury and wrongful death action awards are not taxable,[1] we see no reason why the Tenore rule in wrongful death actions in New Jersey should not also apply in personal injury actions. Furthermore, as stated in Liepelt, supra, 444 U.S. at 498, 100 S.Ct. at 759-760, 62 L.Ed.2d at 696, such an instruction is brief and easily understood, is not prejudicial to either party, and will "merely eliminate an area of doubt or speculation that might have an improper impact on the computation of the amount of damages." We hold that in personal injury actions a jury must be instructed, upon request, that a damages award is not subject to federal income tax or New Jersey gross income tax.

(B)
The $792,000 judgment in this case represents the jury verdict of $600,000 and 32% prejudgment interest thereon from the July 8, 1981 filing of the complaint to the March 21, 1984 entry of judgment pursuant to R. 4:42-11(b). Post-judgment interest continues to accrue under R. 4:42-11(a) at 1%, or $6,000, per month. Generally, large gambling winnings and state-conducted lottery proceeds are subject to 20% federal income tax withholding under the Internal Revenue Code, 26 U.S.C.A. § 3402(q). In projecting plaintiff's estimated future income losses due to his disability, his economist reluctantly estimated a "tax bite" of "somewhere between 15 and 20 *294 percent." Although this testimony did not directly relate to the actual non-taxability of the lump-sum awarded by the jury, it is apparent that, in combination with the other factors noted, that the omission in the damages charge was clearly capable of producing an unjust result. R. 2:10-2. The jury may, for example, have increased a planned $480,000 verdict by $120,000 in the mistaken belief that 20% of the total of $600,000 would be withheld for federal income taxes. Damage recoveries, of course, are in the final analysis paid for by the general public in the form of increased insurance premiums and consumer goods prices. Although the proper charge was agreed to by both attorneys and twice requested by defense counsel, it was not given. The omission cannot really be said to be plain error since it was brought to the judge's attention, but it certainly was not harmless error under the circumstances of this case.
Since the charge should have been given and its omission was clearly capable of producing an unjust result, a new trial must be held on the issue of damages. We therefore do not reach the question advanced in contention (4) as to whether, in the absence of other error, the $600,000 verdict was excessive.

III
Because the case will be tried again on the issue of damages unless settled,[2] we briefly allude to another damages problem not considered below nor briefed on this appeal. The standard *295 damages charge for pain, suffering, disability and impairment, and lost earnings included the life expectancy of the plaintiff as well as his work life expectancy. The jury was asked to separately calculate wages lost to the date of the trial and then from the trial date into the future. For the future loss, two formulas were given to the jury  based upon the economist's testimony  the first where inflation is assumed to offset the otherwise required discounting of future losses to the present based upon the time value of money, and the second where the discount rate exceeds the inflation rate to reflect a "real" interest rate.[3] The jury, of course, was asked at the end of the charge to bring in a lump-sum award if it found for plaintiff on the liability issue. Since the subsequent addition of prejudgment interest of 32% was applied to the lump-sum of $600,000, there may have been an overstated loss of a portion of the lump-sum award that represented future loss of earnings calculated under either formula as of the date of trial. For this reason, the United States Supreme Court in Jones & Laughlin Steel Corp. v. Pfeifer, supra, n. 3 (at n. 22 of the opinion) has suggested discounting the entire lost stream of earnings back to the date of injury and then adding pre-judgment interest thereon.
Finally, to avoid the foregoing problem and facilitate trial and appellate court inquiry as to alleged verdict excessiveness, the court and counsel might alternatively consider requiring the jury to separately assess and report the components of the lump sum verdict. The power of a trial judge to so direct is clear. Nylander v. Rogers, 41 N.J. 236, 239-240 (1963).
Reversed and remanded for a new trial on damages only. No costs.
NOTES
[1] See Annotation, "Propriety of taking income tax into consideration in fixing damages in personal injury or death action." 16 A.L.R. 4th 589 (1982).
[2] Counsel and their clients may want to consider a structured settlement with available tax savings that can benefit both parties and provide security for plaintiff against improvident investment or squandering of the relatively large sum of money involved in this case. See, for example, Merendino v. FMC Corp., 181 N.J. Super. 503 (Law Div. 1981); Pettiford v. Eskwitt, 189 N.J. Super. 485 (Law Div. 1983); A. v. D., 196 N.J. Super. 340 (Law Div. 1984); Bambi v. O., 196 N.J. Super. 349 (Law Div. 1984); Staller, Structured Settlements, Ch. 10 of Advocacy-Settlement, Miller (Matthew Bender, 1983); Glen, Periodic Payment of Personal Injury Damages, Ch. 2 of Dealing with Damages, Itzkoff (PLI, 1983).
[3] See, generally, Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983).