211 N.J. Super. 657 (1986)
512 A.2d 560
KENNETH J. FRIEDMAN AND RUTH FRIEDMAN, PLAINTIFFS-RESPONDENTS, CROSS-APPELLANTS,
v.
C & S CAR SERVICE, A/K/A CURTIS & SCOTTY CAR SERVICE, RALLYE IMPORTED AUTO PARTS INC., AND COLUMBIA MOTOR CORPORATION, DEFENDANTS-APPELLANTS, CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 30 and May 29, 1986.
Decided July 8, 1986.
*659 Before Judges KING, O'BRIEN and SIMPSON.
Bernard M. Radowitz argued the cause for appellant, C & S Car Service.
Gerald D. Siegel argued the cause for appellant, Rallye Imported Auto Parts Inc. (Lewis, Siegel & Wood, attorneys; Gerald D. Siegel, on the brief).
Thomas G. Aljian argued the cause for appellant, Columbia Motor Corporation.
Kenneth A. Berkowitz argued the cause for respondents, Kenneth J. and Ruth Friedman (Blume, Vazquez, Goldfaden, Berkowitz, attorneys; Kenneth A. Berkowitz, on the brief).
The opinion of the court was delivered by SIMPSON, J.A.D.
In this products liability, automobile accident personal injury case, defendants appeal from the February 20, 1985 judgment entered upon a jury verdict in favor of plaintiff, Kenneth J. Friedman, in the amount of $875,000 and his wife, Ruth Friedman, in the amount of $10,000 on her per quod claim. The sole viable issue on the appeal is the alleged excessiveness of the $875,000 verdict, because other initially raised issues have become moot as a result of our Supreme Court's decision in Lang v. Baker, 101 N.J. 147 (1985), and the unappealed determination by the trial judge that defendant Columbia Motor Corporation (Columbia) must indemnify the other defendants for their liability to plaintiffs. The February 20, 1985 Order for Judgment and Other Relief included a denial of Columbia's motion for a new trial as to damages or remittitur pursuant to R. 4:49-1. Although not addressed in the original briefs filed in the appeal, possible plain error clearly capable of producing an unjust result was noticed by us at oral argument, R. 2:10-2, and supplemental briefs have been filed and oral arguments heard on an issue that we have determined to require a new trial on damages.
*660 Kenneth J. Friedman was born on July 28, 1943, and was 39 years old when he was injured on July 29, 1981, in an automobile accident. A defectively designed master brake cylinder, installed on his 1966 MGB Roadster by defendant C & S Car Service, failed and caused him to crash into another car and suffer a comminuted fracture of his left wrist. C & S had obtained the master brake cylinder from defendant Rallye Imported Auto Parts, Inc., which had purchased it from defendant Columbia. It is not disputed that Columbia is ultimately liable for all present damages, interest and costs which total less than the $2 million coverage provided by its liability insurance policy.
Kenneth J. Friedman has a Ph.D. in biological sciences and prior to the accident was an Assistant Professor at the University of Medicine and Dentistry of the State of New Jersey (UMDNJ). Although he can no longer perform "highly sophisticated microsurgical research experiments," he has been promoted since the accident to Associate Professor and there was no claim for past, present or future lost wages or any other economic loss. There was no claim for any medical expenses either, and presumably there was full coverage under the New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1. et seq. The request for money damages was, accordingly, for pain, suffering, disability and impairment and in his brief plaintiff has summarized the proven elements and suggested justifiable values as follows:

1. Initial injury, cast and four days hospitalization $ 30,000.
2. Three months cast, nine months physical therapy,
 disability 40,000.
3. Darrach procedure, three days hospitalization,
 therapy 30,000.
4. Future surgical decompression of median nerve
 to correct carpal tunnel syndrome, surgery to
 fuse dominant wrist 40,000.

*661
5. Years of study and work perfecting microsurgical
 techniques 90,000.
6. 26 year work life estimate from date of accident
 (age 39) to age 65 @ $15,000 for deprivation of
 professional skill (microsurgery ability) 390,000.
7. Pain, suffering, disability and impairment @ $40
 per day for approximately 11,800 days[1] 472,000.
 ___________
 Total $1,092,000.
 ===========

Although plaintiff notes that the per diem figures could be "moved up or down somewhat" the total[2] is asserted to underscore the reasonableness of the $875,000 verdict for Dr. Friedman. We disagree because we believe that items six and seven are overstated in failing to reflect the time value of money in the calculation of the present value of future losses. Since the jury was advised of the Table of Life Expectancy contained in Appendix I to the Rules of Practice, they should also have been advised of the present value of $1.00 per annum contained in the same appendix. As to item seven, the present value of $1.00 per annum for the life of a 41 year old male, using the 5 1/2% interest table in Appendix I to the Rules of Practice is 13.6281. Applying that factor to the $14,600 yearly figure ($40 x 365) for future noneconomic loss results in a total of $198,970.26 or $273,029.74 less than the $472,000 projected by plaintiff. Although the table cannot be used directly in calculating the item six loss, the present value of the $15,000 per year for the future work life estimate, again using a 5 1/2% interest rate as used in the table in Appendix I to the Rules of Practice, is *662 $204,937.50.[3] This is $185,062.50 less than the $390,000 projected by plaintiff. The total of the required reductions from plaintiff's figures is $458,092.24.[4] in order to reflect the time value of money in calculating the present value[5] of future losses. Plaintiff's $1,092,000 total becomes $633,907.76 which, on this basis, disproves the reasonableness of the $875,000 jury verdict for Dr. Friedman. Item four also involves future losses that in our view require jury instructions as to present value in the event they utilize the time-unit basis of calculating unliquidated damages, as plaintiff suggested in this case pursuant to R. 1:7-1.(b).

I

PLAINTIFF'S SUMMATION INCLUDING TIME-UNIT ARGUMENT
During the charge conference, immediately before summations, plaintiff's counsel advised the judge he would be making a "time unit summation" as permitted by R. 1:7-1(b):
(b) Closing Statement.... In civil cases any party may suggest to the trier of fact, with respect to any element of damages, that unliquidated damages be calculated on a time-unit basis without reference to a specific sum. In the event such comments are made to a jury, the judge shall instruct the jury that they are argumentative only and do not constitute evidence.
Defendants' summations made no reference to an anticipated time-unit summation by plaintiff. As to damages, counsel for plaintiff summed up in relevant part as follows:
These are the special damages. Now, we get into the general damages. We're all familiar with a working wage, usually for an eight hour day. You're going to have to figure out what the wages of pain are. Unlike your working wage, the hours of pain you're in and the problems it causes isn't limited, it *663 doesn't work on an eight hour day. We're talking about a twenty-four hour wage of pain and limitation of motion. You'll have to ask yourself what's one day of a filing, what's a fair compensation, just what is a good night's sleep worth? What's a fair amount to compensate for a good night's sleep and know that you've never had it for three and a half years, you're never going to have it again, because your problems are even worse. What's it worth not to do your microsurgery, not to be able to lift anything heavy, not to be able to do for your spouse you [sic] like you used to do, to have a constant gnawing, to have somethings [sic] drop through your fingers, and to have it so that the pain is so intense four times a day that you have to stop everything that you were doing and just sort of hold on and wait for it to go away. Think of what one twenty-four hour period of all that is worth, and when you think well, what number should I use here, I suggest to you that you choose your largest figure because you're better off erring on the side of full compensation than to come to a smaller figure and have Dr. Friedman go not fully compensated for his injuries. You figure out what one day is worth.
Now, multiply that times 365 and you get some approximation of what a year's worth of this suffering is, a fair amount of compensation for that one year. You come to this figure and whatever it is comes to that figure and you multiply that question mark figure times three and a half which is approximately how long Dr. Friedman has suffered with this problem. And then add that figure in over here and then take the figure again and multiply that times thirty and you have your figure over here. When you get through adding up all of these, particularly when you get through adding up one day times 365, basically times three and a half, you're going to come to a figure that's probably alot [sic] larger than you thought this case was worth and you're going to say to yourself, Oh, I can't award that much money, it's just too much money. But if you cut it in half, you're going to do half justice, because long after we're gone from here and you've forgotten Dr. Friedman's name, I've forgotten Dr. Friedman's name and nobody even thinks about Dr. Friedman, twenty years from now he's still going to be up at night suffering with his wrist joint. And if you lower that amount, you're going to be depriving him of all the future pain and suffering that he's going to endure and he's not going to be able to come back to court to seek compensation for that pain and suffering.
Now, I think basically we've got a pretty good system of justice and you're in charge of justice, you're it. That's nothing I can do or the Judge can do, you're the ones that decide. And you have more power now, I don't know any of you, you have more power now than you'll ever have in your life. You're the only ones that can remedy this situation. The Judge can't decide it, I can't decide it, only yourselves. And when you decide what's the right thing to do, what's the right amount of damages to award, I suggest to you that Dr. Friedman's injuries are substantial and in fact monumental. And that your award should be commensurate with his damages, that your award should be a substantial and monumental award to compensate him for all of his injuries up to the present and into the future.

*664 II

THE CHARGE ON DAMAGES
No economists had testified and, as far as the record reveals, there was no request to charge as to present value of future losses (from the tables in Appendix I to the Rules of Practice), and no request to charge as to inflation. In relevant part, the judge instructed the jury as follows:
All right. Now, getting to the claim of damages, there are rules that I have to give you, as far as that's concerned also. Now, first, let me say that you've heard Mr. Berkowitz in his summation, and as he's entitled to do, he presented to you his arguments on a blackboard, what passes for a blackboard in our Courtroom. He used what the Court refers to, as a time-unit basis for his argument. As I say, I'm not in any way saying he should or can't, he's entitled to do what he did. In fact, that he used such an argument, I'm required to give you the following charge. That is, that presentation was argumentative only, and does not constitute evidence. Obviously, the blackboard was not put in evidence, and Mr. Berkowitz knew it couldn't be, and it doesn't go into the Jury Room with you.
All right. Now, let me give you the rules of damages, which are applicable to this case. If you find, that the plaintiffs are entitled to a verdict, when I say plaintiffs, because if you find that Dr. Friedman is entitled to a verdict, then under our law, his wife is also entitled to be considered by you with respect to damages under the appropriate charge, as I've given it to you would be entitled to an award of damages.
Taking first Dr. Friedman. There are several items of damage for which he may be compensated, if he's entitled to a verdict to be awarded in one lump sum. What I'm giving you are a number of factors to think about, but when you come back, you're going to find on this sheet, you have just one line, just come up with one sum, whatever it is for Dr. Kenneth Friedman. He would be entitled to a fair and reasonable compensation for any temporary or permanent injury resulting in disability to or impairment of his facilities, his health, his ability to participate in activities proximately caused by the defendant's negligence. Disability or impairment means the worsening, weakening, or loss of facilities, health or ability to participate in activities. He would be entitled to fair and reasonable compensation for his pain, suffering, discomfort and distress, past, present and future sustained through the defendant's negligence.
Now, the measure of damages for disability or impairment of pain and suffering, for discomfort and distress is what a reasonable man or woman would consider to be adequate and just in all the circumstances of the case to compensate the plaintiff for his disability, impairment, pain and suffering, discomfort and distress, past, present and future, no more and no less. You notice in there I say what a reasonable man or woman would consider to be adequate and just, that's you. You make the decision. We have computers for everything, but for this particular job. The only computer is your collective *665 mind. All this information is put into your minds, and you come out with the figure. You are the reasonable man and woman. I can't provide you with any formula by which a plaintiff alleged pain and suffering and disability may be measured in terms of money. The laws provided no better yardstick for your guidance, than your own enlightened conscience. The problem is one, that involved the exercise of sound judgement as to what is fair and just and reasonable under all the circumstances. In this undertaking, you should have regard for the testimony of the plaintiff, bearing on the subject of his discomfort. You should measure that testimony against the background of your own common experience in light of your own appreciation of the inherent probabilities, as your own frank appraisal of the plaintiff's demeanor and general credibility as a witness.
You should scrutinize all the other evidence presented by all the parties on this subject, including, of course, the testimony of the doctors who appeared. Having given weight and consideration to each of the factors, the extent that you feel such weight or consideration is merited, you'll arrive at a judgement that fits the sum of money, that plaintiff shall receive and compensation for his disability, impairment of facilities, pain, suffering, in discomfort and distress, past, present and future.
Now, there's no evidence before you, and plaintiff is not seeking any medical bills, any hospital bills, any bills of that type. That's all taken care of from another source. You don't have to consider it or concern yourselves with it, it's not before you. What I've just given you is what you should consider, pain and suffering, permanent, temporary, disability, pain, suffering from the time it happened down to, if you find under the facts presented to you, for the rest of his life.
Now, that's been read to you, as the plaintiff is entitled to, the life expectancy of Dr. Friedman. His life expectancy is 30.61 years, based upon the fact, that he was born on July 28, 1943. Now, if any of you happen to be born about that period of time, this is no guarantee. We don't guarantee that our box tells you, you're going to live 30.61 years, that's a statistical figure, hopefully you'll life [sic] longer. We know that unfortunately some people don't make it, they die by reason of accident or from ill health of some type. The government gives us this figure, 30.61 years based upon thousands of people, that are born on that day. By reason of the fact, that this figure is given to you, I give you the following charge:
That the figure of 30.61 years is an estimated figure on the probable length of life based on statistical data. It's contained in an actuarial table attached to the rules of Court. Since it's a general rule, you should use it with caution in individual cases. The plaintiff may live longer than the actuarial table, or he may die or be killed in a much shorter period of time. You should consider the life expectancy figure in your determination of damages, if any, to be awarded for future pain and suffering, disability and impairment. You should exercise your sound judgement in applying the life expectancy figure without treating it as a necessary and fixed rule.

*666 III

THE PRESENT VALUE OF FUTURE PAIN AND SUFFERING
Prior to the September 13, 1982 effective date of R. 1:7-1.(b), New Jersey held it was improper for counsel to argue to a jury that it use a so-called per diem formula for the calculation of damages for pain and suffering. Cox v. Valley Fair Corp., 83 N.J. 381, 384 (1980); Botta v. Brunner, 26 N.J. 82 (1958). Our Supreme Court has not yet addressed the question of whether a jury can or must be instructed to consider the present value of future pain, suffering, disability and impairment. Cases in other jurisdictions are divided on the issue. Illustrative opinions favoring the proposition, in recognition of the time value of money, include Metz v. United Technologies Corp., 754 F.2d 63 (2d Cir.1985); Gretchen v. United States, 618 F.2d 177 (2d Cir.1980); Chiarello v. Domenico Bus Service, Inc., 542 F.2d 883 (2d Cir.1976); Abbott v. Northwestern Bell Tel. Co., 197 Neb. 11, 246 N.W.2d 647 (Sup.Ct. 1976); Wileman v. Wade, 665 S.W.2d 519 (Tex. App. 5 Dist. 1983); Texas and Pacific Railway Company v. Buckles, 232 F.2d 257 (5th Cir.1956), cert. den. 351 U.S. 984, 76 S.Ct. 1052, 100 L.Ed. 1498 (1956). Contrary views appear in McKenna v. New York, 112 A.D.2d 996, 492 N.Y.S.2d 805 (A.D. 2 Dept. 1985); Ball v. Burlington Northern R. Co., 672 S.W.2d 358 (Mo. App. 1984); Flanigan v. Burlington Northern Inc., 632 F.2d 880 (8th Cir.1980), cert. den. 450 U.S. 921, 101 S.Ct. 1370, 67 L.Ed.2d 349 (1981); Barlage v. The Place, Inc., 277 N.W.2d 193 (Minn.Sup.Ct. 1979); Missouri Pac. R. Co. v. Handley, 341 S.W.2d 203 (Tex.Civ.App. 1960). See also Annotations in 3 A.L.R. 4th 940 (1981), 60 A.L.R.2d 1331 (1958), and 28 A.L.R. 1177 (1924). In addition, see 22 Am.Jur.2d, Damages, § 108 at 157; Dobbs, Handbook on the Law of Remedies, § 8.7 at 574 (1973).
In our view, a jury should always be instructed on the general principles applicable to the present value of future losses when a time-unit basis argument is made as to calculation *667 of unliquidated damages. This will best assure attainment of the twin objectives of fair and reasonable compensation for plaintiffs and non-excessive verdicts against defendants. It will accord with the principle applicable in wrongful death actions that future pecuniary losses should be discounted to present value. Tenore v. Nu Car Carriers, 67 N.J. 466, 474 (1975).[6] It will further reflect the public interest involved since, as in this and most cases, the true costs of plaintiffs' recoveries are borne by the public in the form of insurance and product costs. It may also reduce the presently perceived need to limit noneconomic loss recoveries by statutory ceilings. Bills are presently pending before Congress[7] and the New Jersey Legislature[8] that would, among other things, impose such "caps."[9]
Plaintiff contends, however, that even if a present value charge would have been appropriate, there was no reversible error because defendant did not request such a jury instruction. We disagree. First of all, we will notice plain error capable of producing an unjust result "in the interests of justice" even if not raised below. R. 2:10-2. See also R. 1:7-2 and R. 1:7-5. Secondly, since the charge properly included reference to plaintiff's life expectancy as contained in the Table *668 of Life Expectancy in Appendix I to the Rules of Practice, it should also have included the applicable portion of the Table of Present Value of $1 Annuity contained in the same appendix. Those tables also include widow's and widower's percentages of sale that must be used to value dower and curtesy interests pursuant to R. 4:63-3.[10] We hold that the present value of $1 annuity tables must be charged to a jury when a time-unit closing statement is made as to future losses for unliquidated damages pursuant to R. 1:7-1.(b). The crucial importance is evident in a case such as this where no economists or other financial experts testified as to calculation of future losses. Although pain and suffering awards are "highly impressionistic"[11] and will not be upset except in clear cases,[12] the circumstances of this case indicate a strong likelihood that the jury was misled in reaching the $875,000 verdict. Long before the New Jersey Supreme Court held in Lang v. Baker, supra, that an R. 4:5-2 statement of damages claimed does not place a ceiling on recoveries, plaintiff filed a $150,000 statement and later amended it to $250,000. In a December 1984 certification, plaintiff's counsel said he demanded $250,000 at a July 1984 settlement conference and the judge said that "for settlement purposes" the case "had to be worth $150,000 to $175,000."[13] *669 Counsel further noted that just prior to trial he "offered to cap damages at $500,000 in exchange for defendants stipulating liability." Columbia's counsel claimed at the motion for a new trial or remittitur that the demand immediately before trial was $175,000 and the judge apparently agreed. The judge noted, and we agree, that pretrial demands are "of no particular point" in determining whether a verdict is excessive. The judge also concluded that the $875,000 verdict was high, but "not so shocking in view of ... the fact that [Dr. Friedman] spent many, many years acquiring a high degree of professional skill which he says was taken ... away from him...."
Reasonable minds can obviously disagree as to whether the verdict in a case such as this is excessive, and but for the already noted deficiencies in the damages charge we would hesitate to reverse the denial of a new trial or remittitur. We are fully satisfied, however, that under the circumstances of this case the omissions were clearly capable of producing an unjust result in that (1) in all likelihood the jury utilized the time-unit method of calculating the damages and (2) in all likelihood they did not consider present value principles in ascertaining the value of future losses.
With respect to the failure of Columbia to request a present value charge, Housen v. Olesky, 71 N.J. Super. 95 (App.Div. 1961), is instructive. There plaintiff orally requested, in front of the jury, a supplemental charge as to the Tables of Life Expectancy and Present Value and the court said "I so charge." While disapproving of this procedure, we found no harmful error to defendant since the statement was probably ineffective and, in any event, defendant had made no such request. Judge Conford stated, however, that as to plaintiff's requests:
These concerned the tables of life expectancy and of the present value of future income, not mentioned in the charge. These matters, especially the latter, were important, if not essential to a complete and proper charge; *670 counsel might well have expected these subjects to be treated in the charge without advance request. [Id. at 98; emphasis added]
In our case, we conclude that a present value charge was not only important, but was crucial to a complete and proper charge on damages. A proper jury charge is essential for a fair trial and should cover all essential matters. Campos v. Firestone Tire and Rubber Co., 98 N.J. 198, 210 (1984). The required instruction here involved was of the type that a judge must give even without a request from counsel. Wild v. Roman, 91 N.J. Super. 410, 413 (App.Div. 1966). Cf. Polulich v. J.G. Schmidt Tool Die & Stamping Co., 46 N.J. Super. 135 (App.Div. 1957).

IV

THE TIME VALUE OF MONEY
Notwithstanding the foregoing, plaintiff contends that there was no plain error in the charge because there was no "inflation" instruction which, with the absence of "present value" instructions results, in effect, in application of an acceptable "total offset" method of calculation of future pain and suffering damages. We disagree.
In Pfeifer, supra n. 11, Justice Stevens, for a unanimous United States Supreme Court held that application of a state's "total offset" theory as a mandatory rule in the federal courts was error. While acknowledging its virtue of simplicity, he concluded that a "real interest rate" of between 1% and 3% would be acceptable if a trial court explained its choice. Real interest is the excess of nominal interest over inflation and reflects the time value of money. It also reflects, of course, the risk and other market factors inherent in various types of investments, with the lowest "real" rate of return being earned by "risk-free" securities. See also, the comprehensive analysis in Feldman v. Allegheny Airlines, Inc., 382 F. Supp. 1271 (D.Conn. 1974), aff'd in part, rev'd in part, 524 F.2d 384 *671 (2d Cir.1975), and note the statement, on the appeal, by Judge Friendly (concurring dubitante):
The question here, how far awards of damages for disabling personal injury or for death shall attempt to make allowance for future inflation, is of great concern to the states since awards like that made here [$444,056] will further escalate the heavily mounting burden of liability insurance costs. [524 F.2d at 390]
We, too, reject the "total offset" theory in the light of both historical and current real rates of return on investments. The arithmetic mean total annual returns from 1926 through 1985 were 12% for common stocks, 5.1% for long term corporate bonds, 4.4% for long-term government bonds and 3.5% for U.S. Treasury Bills, while inflation was 3.2%.[14] The geometric means (rate of return per annum compounded annually) were lower in all cases, as was inflation. Ibbotson, pp. 22-25. Treasury Bill returns are considered to be the only risk-free security and since mid-1980 the returns on Treasury Bills have substantially exceeded the inflation rate, so that the real riskless rate was 5.2% over 1981-1985. Ibbotson, p. 64. During this same current five year period long-term government bonds annual returns averaged 16.8% while inflation averaged only 4.9%. Ibbotson, pp. 60 and 120. One estimate of expected trends of inflation (measured by the percent change, year to year for the consumer price index) is as follows:

 1986 3.5%
 1987 4.1%

*672
 1988 3.7%
 1989 3.3%
 1990 2.8%
 1991 2.1%[15]
It is, of course, impossible to know with certainty what future inflation and investment returns will be. The evidence is clear, however, that there is a time value of money reflecting a "real return," so that the "total offset" theory is economically debatable and certainly should not be adopted in New Jersey as a rule of law. In the absence of any expert testimony to assist a jury, and where a time-unit argument has been made utilizing the life expectancy table, the instructions to the jury should include both an inflation charge and a present value charge with the applicable present value of $1 figure contained in Appendix I to the Rules of Court. The significance of the application of the present value of an annuity multiplier to future periodic losses has been demonstrated above when applied to amounts suggested in plaintiff's brief. Lesser, but significant, figures indicating the excessiveness of the $875,000 verdict may be seen from the following schedule  using simple assumptions for purposes only of illustration. Counsel's summation suggested a "substantial and monumental award" consisting of a number of items he termed "special damages" plus "general damages" computed on a time-unit basis. He urged a daily figure to be multiplied by 365 for a year and then to be further multiplied by 30 years. Assuming that the jury found "special damages" of $155,000, the remaining $720,000 of the $875,000 lump sum verdict would have been calculated as 30 years times $24,000. Discounting at illustrative interest rates[16] produces the following results for a 30 year period:

*673
 Present Present Present
Compound Value Value Of Value
Interest of $1 $24,000/Year "Special of
 % Annuity For 30 Years Damages" $875,000
 1/2 27.79 $666,960 $155,000 $821,960
 1 25.81 619,440 155,000 774,440
 1 1/2 24.02 576,480 155,000 731,480
 2 22.40 537,600 155,000 692,600
 2 1/2 20.93 502,320 155,000 657,320
 3 19.60 470,400 155,000 625,400
 3 1/2 18.39 441,360 155,000 596,360
 4 17.29 414,960 155,000 569,960
 4 1/2 16.29 390,960 155,000 545,960
 5 15.37 368,880 155,000 523,880
 5 1/2 14.53 348,720 155,000 503,720
 6 13.76 330,240 155,000 485,240
 12[17] 8.06 193,440 155,000 348,440

The bottom line is that there are significant differences, using the tables in Appendix I to the Rules of Court or standard annuity tables, in the present value of future pain and suffering (as in the case of future wage loss) due to the time value of money. Other related considerations suggesting rejection of the "total offset" theory are next noted.

V

INCOME TAXES, PREJUDGMENT INTEREST AND COUNSEL FEES
So far as the record in this case reveals, there was no request made and no charge given that an award of damages would be free of federal and New Jersey income taxes under 26 U.S.C.A. § 104(a)(2) and N.J.S.A. 54A:6-6 b. We have recently held that *674 such a charge must be given upon request. Bussell v. DeWalt Products Corp., 204 N.J. Super. 288, 293 (App.Div. 1985), certif. granted 102 N.J. 398 (1986). With the magnitude of the damages sought in a case such as this, the significance of the tax-free nature of a recovery is obvious. On retrial,[18] the judge should so instruct the jury.
As we also noted in Bussell, supra, the effect of asking a jury to separately calculate damages to the date of trial and then for the future may result in overstating the latter portion of a lump-sum award when prejudgment interest is added to the lump-sum from "the date of the institution of the action or from a date six months after the date the cause of action arises, whichever is later" as provided in R. 4:42-11.(b). 204 N.J. Super. at 294-295. The February 20, 1985 order in this case allowed a total of $234,850 prejudgment interest on the $875,000 verdict and continues to accrue at 12% unless suspended by the trial court in accordance with the rule. It is therefore recommended that the suggestion in Jones & Loughlin v. Pfeiffer, supra n. 11 (at n. 22 of the opinion), be followed and the entire stream of pain and suffering be discounted back to the date of injury before prejudgment interest is added thereto. Alternatively, the jury might be requested to separately report the components of a lump-sum verdict to permit proper application of the prejudgment interest rule. Nylander v. Rogers, 41 N.J. 236, 239-240 (1963). See also Gretchen v. United States, supra, 618 F.2d at 180.
*675 Finally, although not urged by plaintiff in this case, we take note of the suggestion by Judge Blumenfeld in Feldman v. Allegheny Airlines, Inc., supra, 382 F. Supp. at 1292, n. 26, that in some cases refusal to discount future losses to present value may reflect a belief that there is no real overcompensation because of the counsel fees that a plaintiff must bear. Such reasoning would be improper because of the obvious discrimination against plaintiffs suffering only past losses. In any event, the prejudgment interest of 12% in the present case, which is itself not subject to contingent counsel fees, would more than offset the maximum fees permissible under the R. 1:21-7(c) scale applicable to this case.
Reversed and remanded for a new trial on damages only.
NOTES
[1] The jury had been advised that Dr. Friedman's life expectancy at the date of trial was 30.16 years. In summation, plaintiff's counsel referred to the correct figure of 30.61 contained in Appendix I to the Rules of Practice, and then used the rounded figure of 30 in his R. 1:7-1(b) closing statement "time-unit" argument. The correct figure should therefore be 30 x 365 x 40 = $438,000.
[2] Incorrectly stated in plaintiff's brief to be $1,062,000.
[3] The factor, obtainable from standard tables, is 13.6625  which applied to the $15,000 per year for 26 years amounts to $204,937.50. R. Muksian, Financial Mathematics Handbook (Prentice Hall, 1984), p. 407.
[4] $273,029.74 plus $185,062.50.
[5] Using the 5 1/2% interest factor as in Appendix I to the Rules of Practice.
[6] See also St. Louis Southwestern Ry Co. v. Dickerson, 470 U.S. 409, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985), holding that in a Federal Employers' Liability Act case it was error for a state court to refuse to instruct a jury that present value is the proper measure of a personal injury damage award.
[7] H.R. 4874, 99th Cong., 2d Session (1986), introduced May 21, 1986 would limit damage awards for noneconomic losses resulting from professional malpractice to $250,000.
[8] Assembly Bill 2400 (1986), introduced May 5, 1986 would limit noneconomic damages in all cases of personal injuries to $300,000 for "catastrophic injuries" (and $100,000 for other injuries).
[9] As to other state's caps, see 117 N.J.L.J. 842 (June 19, 1986). See also, debate, "Should pain and suffering awards have statutory limits?" 72 ABA Journal 34 (May 1, 1986) and "The Liability Insurance Crisis," The CPA Journal (June 1986) pp. 4-12.
[10] As noted in the Comment to this rule, Pressler, Current N.J. Court Rules, Comment R. 4:63-3 (1986), the tables in Appendix I were amended, effective April 1978, to increase the interest rate (which is a discount factor to obtain the gross sum for the present value of future dower or curtesy) from 3 1/2% to 5 1/2 %. Rights of dower and curtesy were abolished effective May 28, 1980, but continue as to property acquired prior thereto. Girard Acceptance Corp. v. Stoop, 177 N.J. Super. 193, 194 at n. 1 (Ch.Div. 1980).
[11] Jones & Loughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 552, 103 S.Ct. 2541, 2558, 76 L.Ed.2d 768, 793 (1983).
[12] Baxter v. Fairmont Food Co., 74 N.J. 588 (1977).
[13] Counsel also said that since the August 8, 1984 Appellate Division holding in Lang v. Baker, 195 N.J. Super. 430, 480 A.2d 216 (App.Div. 1984), that the statement of damages was limiting [reversed by the New Jersey Supreme Court on December 12, 1985, Lang v. Baker, 101 N.J. 147, 501 A.2d 153 (1985)] he routinely demanded damages of 1 billion dollars.
[14] Stocks, Bonds, Bills, and Inflation: 1986 Yearbook, Chicago: Ibbotson Associates, Capital Management Research Center, 1986, at p. 25 [hereafter "Ibbotson"].
[15] 1986 Economic Report of the President, 22 Weekly Comp. Pres. Doc. 158 (Feb. 10, 1986).
[16] Factors obtained from the standard tables referred to in note 3.
[17] The rate, at simple interest, for "prejudgment interest" to be added to tort awards pursuant to R. 4:42-11.(b).
[18] Since liability has been finally determined, the parties will presumably attempt to settle the damages issue prior to trial thereof. We therefore commend to their attention a recent article "Tax Planning: Damage and Injury Payments" by Samson and Schnee in The CPA Journal (May 1986), at p. 24. They might also consider a structured settlement, currently available with about a 9-10% internal rate of return, whereby the interest portion of future annuity payments would be free of income taxes as well as principal. See Bussell v. DeWalt Products Corp., supra 204 N.J. Super. at 294, n. 2, 498 A.2d 787; Structured Settlements and Periodic Payment Judgments, Hindert, Dehner and Hindert (Law Journal Seminars  Press, New York 1986).