MONICA L. RUFF AND JACK H. RUFF, PLAINTIFFS-REPON-
DENTS, v. DAVID M. WEINTRAUB, DEFENDANT-APPEL-
LANT, AND EMANUEL WEINTRAUB ASSOCIATES, THERESA
L. OGAR, AND JESSIE WILLIAMS, DEFENDANTS.

Argued September 22, 1986—Decided January 29, 1987.

*John G. Tinker, Jr.,* argued the cause for appellant (*W. Stephan Leary,* attorneys).

*Lewis Stein* argued the cause for respondents (*Nusbaum, Stein, Goldstein & Bronstein,* attorneys).

*Joseph Buttafuoco* submitted a letter in lieu of brief on behalf of respondent Monica L. Ruff in defense of the counter-claim.

The opinion of the Court was delivered by

STEIN, J.

We granted certification, 104 *N.J.* 416 (1986), to decide whether a jury in a personal injury action should be instructed that the proper measure of damages for lost future wages is net income after taxes. Since evidence of lost income is often introduced in the form of gross rather than net wages, we must also determine whether evidence of the plaintiff's future tax liability is admissible. In addition, this case presents the issue,

decided today in *Bussell v. DeWalt Products Corp.*, 105 *N.J.* 223 (1986), whether a trial court must instruct the jury that personal-injury damage awards are not subject to federal or state income taxes.

In this case, the trial court refused to instruct the jury that personal-injury damage awards are not taxable, and declined to instruct the jury that net rather than gross income was the appropriate measure of damages. The court also barred defense counsel from cross-examining plaintiff's economist on the issue of taxes. The Appellate Division held that the trial court's rulings were proper. We disagree. Accordingly, we reverse the Appellate Division and remand for a new trial on damages.

The other issue raised is whether it is appropriate to award prejudgment interest on damages for future losses. The trial court awarded prejudgment interest on the entire damage award, pursuant to *Rule* 4:42–11(b). The Appellate Division affirmed. Since we agree that this issue is governed by *Rule* 4:42–11(b), we affirm this portion of the Appellate Division's decision.

I

This case arises out of a four-car accident that took place in January, 1981, on Route 80 West in Rockaway. The plaintiff, Monica Ruff, was driving in the center lane when she came upon the car of defendant David Weintraub. Weintraub's car was moving very slowly and was apparently disabled. Unable to pass due to heavy traffic, Mrs. Ruff remained in the center lane until the Weintraub vehicle stalled, coming to a complete stop. Mrs. Ruff exited her car, and walked forward to Weintraub's car to offer assistance. She then returned to her vehicle. Immediately after, a car driven by defendant Theresa Ogar and another driven by defendant Jessie Williams collided with Mrs. Ruff's car, which in turn collided with the Weintraub vehicle.

Mrs. Ruff suffered serious injuries, requiring multiple operations. At the time of the accident, she was 49 years old and had been working full-time as a tri-lingual secretary. She is no longer able to work due to her injuries.

Mrs. Ruff and her husband, Jack Ruff, filed suit against David Weintraub, Emanuel Weintraub Associates, Weintraub's employer and owner of the car he was driving, Theresa Ogar, and Jessie Williams. The trial was held in March, 1984. During the trial, plaintiffs offered the testimony of Dr. Richard Ruth, an economist, as to the computation of the present value of Mrs. Ruff's lost earnings. Employing the total-offset method,[1] Dr. Ruth testified that to compute the present value of lost future wages, the jury should multiply the number of years remaining in the plaintiff's work-life by her annual income.[2] Testimony had previously been elicited as to Mrs. Ruff's gross earnings at the time of the accident. Subsequent to Dr. Ruth's testimony, a personnel officer from Lutheran World Ministries, Mrs. Ruff's employer, testified that at the date of trial Mrs. Ruff's gross salary would have been $19,200.

Defense counsel, apparently concerned about the combined effect of Dr. Ruth's testimony with the prior testimony as to Mrs. Ruff's gross income, asked Dr. Ruth whether he had taken into account the fact that various federal and state taxes would have to be deducted from Mrs. Ruff's gross income. The trial court refused to allow the defense to pursue this line of questioning, and later ruled that gross rather than net income was the proper measure of damages. Although the court did allow plaintiff's W–2 form to be admitted as an exhibit, it was admitted only to show plaintiff's gross income.

---

[1] This method assumes that the rate of inflation would totally offset the discount rate for present value, thus eliminating the need to account separately for those factors in calculating damages for lost income. *Cf. Friedman v. C & S Car Serv.*, 211 *N.J.Super.* 657, 671–72 (1986) (rejecting use of total-offset method of discounting to present value), certif. granted, —— *N.J.* —— (1986).

[2] It was estimated that the plaintiff would have worked an additional fourteen years after the date of trial had she not been injured.

Near the end of the trial, defense counsel made several requests to charge. Among them was the following:

> You should consider the net earnings of the Plaintiff after taxes as the measure of damages to be awarded for future loss of income. The reason for considering net income, rather than gross income, is that Plaintiffs have suffered a loss of income only to the extent of the portion of Plaintiff, Monica Ruff's salary received after taxes.

Defense counsel requested that if the court did not give this charge, the following charge be given:

> You are to assume that any award made to Plaintiff as damages in this case, whether in compensation for past or future loss of income found by you to have resulted from the negligence of the Defendants or in compensation for personal injuries sustained by her, is not subject to income tax or other tax. Should you find that Plaintiff is entitled to an award of damages, then you are to follow the instructions already given by the Court on measuring those damages and in no event should you either add to or subtract from that award by any speculation concerning taxes.

The trial court declined both of these requests. Instead, it instructed the jury as follows:

> I am telling you that you must consider gross wages. You don't take into consideration Social Security deductions and Blue Cross-Blue Shield deductions and income tax deductions. You're to concern yourselves solely with gross wages that the plaintiff will not earn as a result of the accident in question.

The defense objected to this portion of the charge.

The jury returned a verdict of $650,000 for Mrs. Ruff. Negligence was apportioned as follows: Theresa Ogar: 70%; David Weintraub: 25%; Jessie Williams: 5%. Monica Ruff and Emanuel Weintraub Associates were found not to have been negligent. The $650,000 award included $300,000 for lost wages (past and future), $300,000 for pain and suffering, and $50,000 for medical expenses. Jack Ruff was also awarded $100,000 for loss of consortium. The trial court then added $219,682 in prejudgment interest to Monica Ruff's award, and $33,798 to Jack Ruff's award.

The Appellate Division affirmed. The court held that it was proper to exclude evidence and refuse to charge the jury on the effect of income taxes on future wages, relying on *Scalise v. Central R.R. Co.*, 129 *N.J.Super.* 303 (App.Div.1974). The court also upheld the assessment of prejudgment interest on

the entire award, relying on this Court's decision in *Busik v. Levine*, 63 *N.J.* 351, appeal dismissed, 414 *U.S.* 1106, 94 *S.Ct.* 831, 38 *L.Ed.*2d 733 (1973).

## II

In *Tenore v. Nu Car Carriers*, 67 *N.J.* 466 (1975), we held that the proper measure of damages for lost income in a wrongful-death action is the plaintiff's net income after taxes. · *Id.* at 494. Accordingly, we also held that defendants must be given an opportunity to introduce extrinsic evidence and cross-examine witnesses concerning the deceased's future income tax liability. *Id.* We expressly limited the decision in *Tenore* to wrongful-death cases, deferring a decision on its applicability to personal-injury cases. *Id.* at 494 n. 27. We now hold that the proper measure of damages for lost income in personal-injury cases is net income after taxes, and that evidence of the plaintiff's future tax liability may be introduced by the defendant.

Our decision is based on the principle that damages in personal-injury actions should reflect, as closely as possible, the plaintiff's actual loss. *Tenore, supra,* 67 *N.J.* at 477. If the plaintiff in this case had not been injured, and continued to work, her future earnings would have been subject to taxes. The amount available for her use would have been her net income. However, damage awards in personal-injury actions are not subject to state or federal income taxes. 26 *U.S.C.* § 104(a)(2); *N.J.S.A.* 54A:6–6. Thus, if the plaintiff is allowed to recover her gross wages, she will be receiving more than she would have had she continued work. Put simply, "If plaintiff gets, in tax free damages, an amount on which [s]he would have had to pay taxes if [s]he had gotten it as wages, the plaintiff is getting more than [s]he lost." 2 F. Harper & F. James, *The Law of Torts* § 25.12 at 589 (1986) (hereinafter Harper & James).

This reasoning has been used in a number of state and federal wrongful-death cases to require that the computation of damages for lost future wages be based on net rather than gross income. *See, e.g., Norfolk and Western Ry. Co. v. Liepelt,* 444 *U.S.* 490, 100 *S.Ct.* 755, 62 *L.Ed.*2d 689 (1980); *Brooks v. United States,* 273 *F.Supp.* 619 (D.C.S.C.1967); *Curtis v. Finneran,* 83 *N.J.* 563 (1980); *Tenore v. Nu-Car Carriers, supra,* 67 *N.J.* at 484. The same reasoning should apply in personal-injury cases whenever damages are awarded for lost future income. *See Fanetti v. Hellenic Lines Ltd.,* 678 *F.*2d 424, 431 (2d Cir.1982), *cert.* denied, 463 *U.S.* 1206, 103 *S.Ct.* 3535, 77 *L.Ed.*2d 1387 (1983) ("Focusing on after-tax earnings is an exercise in economic fairness; by this decision we extend it at least to all federal law claims for future lost wages."); *accord Shaw v. United States,* 741 *F.*2d 1202, 1206–07 (9th Cir.1984).

The primary argument against taking income taxes into account in computing damage awards for lost future income is that the plaintiff's future tax liability is too speculative and too complicated for the jury to consider. It is also argued that Congress, by excluding personal injury damage awards from taxable income, intended to bestow a benefit on the injured party that should not be passed on to the tortfeasor. Annotation, "Propriety of taking income tax into consideration in fixing damages in personal injury or death action," 16 *A.L.R.* 4th 589 (1982); Nordstrom, "Income Taxes and Personal Injury Awards," 19 *Ohio St. L.J.* 212 (1958).

We recognize that a plaintiff's future tax liability is uncertain and that the jury will be asked to arrive at a figure without knowing what changes may occur in the tax laws or in the plaintiff's tax status. We also recognize that we are adding yet another variable to the already complicated equation that a jury must use to estimate future losses. However, as we stated in *Tenore,* "[w]e decline to give simplicity paramount significance in fashioning the law of damages. Such an approach might aid the judiciary but hardly justice." *Tenore, supra,* 67 *N.J.* at 493

(citing *Todd v. Sandidge Constr. Co.*, 341 *F.*2d 75, 77 (4th Cir.1964)).

Estimating future tax liability is no more speculative or complicated than many of the other factors a jury considers in setting damages for future losses. Although, as a result of this decision, some testimony on the plaintiff's future tax liability will be necessary, protracted battles between tax experts will not inevitably result. Juries are already considering evidence regarding issues as complicated as future inflationary trends and interest rates without being hopelessly confused or engaging in unwarranted speculation. *See Tenore, supra,* 67 *N.J.* 466; *Friedman v. C & S Car Serv.,* 211 *N.J.Super.* 657 (App.Div.1986), certif. granted, 105 *N.J.* 545 (1986). We are confident that the same can be done with evidence on the plaintiff's future taxes. As the United States Supreme Court stated in *Liepelt, supra,* 444 *U.S.* at 494, 100 *S.Ct.* at 757, 62 *L.Ed.*2d at 694:

> Admittedly there are many variables that may affect the amount of a wage earner's future income-tax liability. The law may change, his family may increase or decrease in size, his spouse's earnings may affect his tax bracket, and extra income or unforeseen deductions may become available. But future employment itself, future health, future personal expenditures, future interest rates, and future inflation are also matters of estimate and prediction. Any one of these issues might provide the basis for protracted expert testimony and debate. But the practical wisdom of the trial bar and the trial bench has developed effective methods of presenting the essential elements of an expert calculation in a form that is understandable by juries that are increasingly familiar with the complexities of modern life. We therefore reject the notion that the introduction of evidence describing * * * estimated after-tax earnings is too speculative or complex for a jury. [Footnote omitted.]

It is argued that while this reasoning may be valid in wrongful-death cases, it is not necessarily applicable in personal-injury cases, where the plaintiff may take actions in the future that will affect his tax status. *See, e.g.,* Wright, "Foreword: Symposium on Damages for Personal Injuries," 19 *Ohio St. L.J.* 155, 157 (1958). For instance, some courts have stressed that the plaintiff in a personal-injury case, unlike the decedent in a wrongful-death action, may have more children, thereby affecting his tax liability. *See McWeeney v. New York, New Haven and Hartford R.R. Co.,* 282 *F.*2d 34, 36 (2d Cir.), *cert.* denied,

364 *U.S.* 870, 81 *S.Ct.* 115, 5 *L.Ed.*2d 93 (1960) ("Is the jury in each case to speculate, or hear testimony on the procreative proclivities and potentialities of the plaintiff and his spouse?"); *Brooks v. United States, supra,* 273 *F.Supp.* at 630 (citing *McWeeney, supra* ).

We do not think that this distinction is significant enough to warrant retaining an unrealistic rule in personal-injury cases. In a wrongful-death action, it is necessary to calculate the decedent's lost future income in order to estimate the contribution he would have made to his survivors. *See Liepelt, supra,* 444 *U.S.* at 494, 100 *S.Ct.* at 757, 62 *L.Ed.*2d at 694; *Curtis v. Finneran, supra,* 83 *N.J.* 563; Harper & James, *supra,* § 25.14 at 598. The only difference in a personal-injury case is that the plaintiff may have more children or change his or her marital status. In both cases net income is the more accurate, and therefore proper, measure of damages.

We also find unpersuasive the argument that Congress, by exempting personal-injury awards from taxes, intended to bestow a benefit on the plaintiff that should not be passed on to the tortfeasor. *See Liepelt, supra,* 444 *U.S.* at 500–01, 100 *S.Ct.* at 760–61, 62 *L.Ed.*2d at 697–98 (Blackmun, J., dissenting); *Huddell v. Levin,* 395 *F.Supp.* 64, 85–88 (1975); *Hall v. Chicago & Northwestern Ry.,* 5 *Ill.*2d 135, 152, 125 *N.E.*2d 77, 86 (1955); Nordstrom, *supra,* 19 *Ohio St. L.J.* at 220–23. We agree with the reasoning in *Liepelt, supra,* 444 *U.S.* at 496 n. 10, 100 *S.Ct.* at 758 n. 10, 62 *L.Ed.*2d at 695 n. 10, where the Supreme Court, rejecting this argument, stated that "we see nothing in the language and are aware of nothing in the legislative history * * * to suggest that [the exemption] has any impact whatsoever on the proper measure of damages * * *." Rather than attributing to Congress an intent to bestow a benefit on plaintiffs, the Court held that it was necessary to deduct taxes in order to achieve an accurate result. *Id.* at 493–94, 100 *S.Ct.* at 757, 62 *L.Ed.*2d at 693–94.

■ To summarize, we hold that the proper measure of damages for lost future income in personal-injury cases is the plaintiff's net income after taxes. Accordingly, the parties may

introduce evidence and cross-examine witnesses with regard to plaintiff's future tax liability, subject to appropriate limitations imposed by the trial court. The trial court must charge the jury, upon request, that the proper measure of damages for lost future earnings is net, rather than gross, income.[3]

Because we now hold that the proper measure of damages for lost future income is net rather than gross wages, the trial court's charge to the jury in this case was reversible error. The jury was specifically instructed that it should use gross wages to calculate lost future income. This charge was "clearly capable of producing an unjust result." *See R.* 1:10–2.

Furthermore, the amount the jury awarded for lost income in this case indicates that the trial court's refusal to allow defense counsel to cross-examine the plaintiff's economist on tax issues was prejudicial error. The economist testified that the jury could arrive at a figure for lost future wages by offsetting interest and inflation and simply multiplying the plaintiff's annual loss by the number of years she would have worked had she not been injured. Using Mrs. Ruff's gross income of $19,200 as the measure of loss, this equation yields a figure of $268,800. Lost income prior to trial was $68,000. The jury awarded a total of $300,000 for past and future lost income. It thus seems likely that the jury was heavily influenced by Dr. Ruth's testimony. Although Dr. Ruth did not specifically testify as to Mrs. Ruff's gross income, prior and subsequent witnesses provided such testimony. Thus, it was probable that if the jury applied Dr.

---

[3]Our holding in this case, and that in *Bussell v. DeWalt Products Corp., supra,* 105 *N.J.* 223, underscore the importance of instructing the jury on tax issues in order to ensure that the verdict is an accurate reflection of the plaintiff's losses. Accordingly, the jury should also be instructed that, although damage awards are not taxable, the interest earned on an award once it is invested is subject to taxes. This factor is taken into account in wrongful-death cases by instructing the jury to use an after-tax interest rate in calculating the present value of the award. *See* Model Jury Charges, Civil § 6.15; *Feldman v. Allegheny Airlines,* 524 *F.*2d 384 (2d Cir.1975). Such an instruction is also appropriate in personal-injury cases. *See Jones & Laughlin Steel Corp. v. Pfeifer,* 462 *U.S.* 523, 537, 103 *S.Ct.* 2541, 2550, 76 *L.Ed.*2d 768, 783 (1983). As we observed in *Bussell, supra,* 105 *N.J.* at 229 n. 2, we leave to the trial courts the task of fashioning a charge to the jury in the event other significant tax issues arise in the course of trial.

Ruth's formula for computing present value, it would base its calculation on Mrs. Ruff's annual gross income. In this context, defense counsel should have been allowed to cross-examine Dr. Ruth on the propriety of using a gross income figure as the measure of plaintiff's loss.

■ We therefore hold that the trial court's refusal to allow cross-examination on the impact of taxes on lost future income, and its charge to the jury that gross income is the proper measure of damages for future earnings, were reversible error.[4] Accordingly, we remand this case for a new trial on damages. Although the trial errors did not relate to the other elements of damages, the interrelationship of the various items of plaintiffs' claim undermines the continued reliability of the separate awards rendered on special interrogatories. In our view, such awards are not "fairly separable" from the award for future lost income. *See Terminal Constr. Corp. v. Bergen County Hackensack River Sanitary Sewer Dist. Auth.*, 18 *N.J.* 294, 341 (1955). On remand, the trial court may consider a motion for remittitur pursuant to *Rule* 4:49–1.

### III

■ This case also raises the issue of whether the trial court must charge the jury, upon request, that damage awards in

---

[4]Plaintiffs argue that if we hold that net rather than gross income is the proper measure of damages for lost income in personal-injury cases, our holding should be applied only prospectively, citing *Coons v. American Honda Motor Co.*, 96 *N.J.* 419 (1984), *cert.* denied, 469 *U.S.* 1123, 105 *S.Ct.* 808, 83 *L.Ed.* 2d 800 (1985). Although we need not decide now the extent of the retroactive effect of our decision, retrospective application of a new principle of law is the traditional rule. *See Coons, supra,* 96 *N.J.* at 425. We are not persuaded by plaintiffs' arguments that an exception to this rule is warranted in this case. In any event, it is clear that our decision should be applied to these litigants. As we observed in *Willis v. Department of Conservation & Economic Dev.*, 55 *N.J.* 534, 541 (1970), "[C]ase law is not likely to keep up with the needs of society if the litigant who successfully champions a cause is left with only that distinction." *Accord Cogliati v. Ecco High Frequency Corp.*, 92 *N.J.* 402, 417 (1983); *Spiewak v. Rutherford Bd. of Educ.*, 90 *N.J.* 63, 83 (1982); *Darrow v. Hanover Township*, 58 *N.J.* 410, 420 (1971).

personal-injury cases are not subject to federal or state income taxes. The trial court in this case failed to give this instruction, although it was requested by the defense. In *Bussell v. DeWalt Products Corp., supra*, 105 *N.J.* 223, which we also decide today, we hold that this charge must be given when properly requested. The trial court's failure to give the charge in this case was error.

## IV

The defense also challenges the amount of prejudgment interest awarded to the plaintiffs by the trial court. Since we are overturning the damage award, the assessment of prejudgment interest must also be set aside. However, the defendant's contention that prejudgment interest should not be assessed on damages for future losses is likely to be raised again on remand. We therefore take this opportunity to comment on the issue.

After the verdicts were returned, the trial court added prejudgment interest to the awards pursuant to *Rule* 4:42–11. Thus, $219,682 was added to Monica Ruff's $650,000 award and $33,798 was added to Jack Ruff's $100,000 award. The defense maintains that prejudgment interest should not be awarded on that part of the judgment that represents recovery for future losses, since those losses have not yet been incurred. Although defendant's arguments on this issue are substantial, we hold that the trial court's award of prejudgment interest in this case was proper.

There are two policy reasons for *Rule* 4:42–11(b), which provides that prejudgment interest shall be assessed at 12% per annum on all judgments in tort actions except in "exceptional cases."[5] The first reason is to compensate the plaintiff for the

---

[5]When the judgment in this case was awarded, the 12% prejudgment interest rate required by *Rule* 4:42–11(b) was consistent with then prevailing market rates. Since then, interest rates have fallen significantly. Accordingly, we have referred to the Civil Practice Committee the issue of whether the Rule should be amended to permit the prejudgment interest rate imposed to more closely reflect prevailing market rates.

loss of income that would have been earned on the judgment had it been paid earlier. *See Busik v. Levine, supra,* 63 *N.J.* at 359; *Kotzian v. Barr,* 152 *N.J.Super.* 561, 565 (App.Div.1977). During the pendency of the trial, defendant has had the use of the money, and has been able to earn interest on it, even though it was later determined to rightfully belong to the plaintiff. The second policy reason for *Rule* 4:42–11(b) is to encourage settlement. As this Court reasoned in *Busik v. Levine, supra,* 63 *N.J.* at 359,

> [t]here is also a public stake in the controversy, for tort litigation is a major demand upon the judicial system. Delay in the disposition of those cases has an impact upon other litigants who wait for their turn, and upon the taxpayers who support the system. And here there is a special inducement for delay, since generally the claims are covered by liability insurance, and when payment is delayed, the carrier receives income from a portion of the premiums on hand set aside as a reserve for pending claims. Hence prejudgment interest will hopefully induce prompt defense consideration of settlement possibilities. [Citation omitted.]

The only qualification to the Rule on prejudgment interest is that "in exceptional cases the court may suspend the running of such prejudgment interest." *R.* 4:42–11(b). This language has been interpreted to mean that "prejudgment interest can * * * be withheld only where it is demonstrated that the policy, spirit and intent of the rule are patently inapposite to the circumstances at hand." *Kotzian v. Barr, supra,* 152 *N.J.Super.* at 565.

Such is not the case here. The applicability of a compensation rationale for prejudgment interest may be questionable in the case of future losses, since it can be argued that those damages accrue after the judgment. However, the public interest in encouraging settlements is an adequate independent basis for the application of the prejudgment interest rule in this case. Thus, this is not an "exceptional" case, as that term has been interpreted.

■ Since *Rule* 4:42–11(b) allows for the suspension of prejudgment interest only in "exceptional cases," the trial court's assessment of prejudgment interest on the entire award was proper in this case. On remand, therefore, it would be appro-

priate for the trial court to award prejudgment interest on damages for both past and future losses.[6]

Accordingly, we reverse and remand for a new trial on damages in accordance with this opinion.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN–7.

*Opposed*—none.

---

[6]We consider the issue raised by defendant to be significant. Accordingly, we refer the issue to the Civil Practice Committee to reconsider the application of the Rule to damages for future losses. *Cf. Jones & Laughlin Steel Corp. v. Pfeifer, supra,* 462 *U.S.* at 538 n. 22, 103 *S.Ct.* 2551 n. 22, 76 *L.Ed.*2d at 784 n. 22 (suggesting that awarding prejudgment interest on the entire lost stream of earnings would be appropriate if those earnings were discounted back to the date of injury rather than the date of judgment); *Bussell v. DeWalt Products Corp.,* 204 *N.J.Super.* 288, 295 (App.Div.1985), rev'd on other grounds, 105 *N.J.* 223 (1986); (citing *Jones & Laughlin*); *Friedman v. C & S Car Serv., supra,* 211 *N.J.Super.* at 674 (citing *Jones & Laughlin*).