**Antonio CIPOLLONE, individually and as executor of the Estate of Rose D. Cipollone, Plaintiff,**

v.

**LIGGETT GROUP, INC., et al., Defendants.**

Civ. A. No. 83–2864.

United States District Court, D. New Jersey.

Aug. 24, 1988.

Budd Larner Gross Picillo Rosenbaum Greenberg & Sade, Marc Z. Edell, Short Hills, N.J., Wilentz, Goldman & Spitzer, Alan M. Darnell, Woodbridge, N.J., for plaintiff.

Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein, Alan S. Naar, Woodbridge, N.J., Webster & Sheffield, James V. Kearney, New York City, for defendant Liggett Group, Inc.

Brown & Connery, Raymond F. Drozdowski, Westmont, N.J., for defendant Philip Morris Inc.

Stryker, Tams & Dill, William S. Tucker, Newark, N.J., for defendant Lorillard, Inc.

## OPINION

SAROKIN, District Judge.

Plaintiff Antonio Cipollone brought this action against Liggett Group, Inc., Philip Morris Incorporated, and Lorillard, Inc., three companies which manufactured the cigarettes smoked by his wife, Rose Cipollone. Mrs. Cipollone died of lung cancer in 1983. Plaintiff sought damages personally and on behalf of his wife's estate. After trial, the jury, responding to specific interrogatories, returned the following verdict.

The jury found that plaintiff had failed to establish defendants' liability on claims of fraud and civil conspiracy. The jury found that Liggett, prior to 1966, had failed to warn consumers of health risks of smoking and that this failure to warn proximately caused Mrs. Cipollone's lung cancer and death. The jury also found that Mrs. Cipollone had voluntarily and unreasonably encountered a known danger by smoking cigarettes and that this conduct by Mrs. Cipollone proximately caused her lung cancer and death. The jury attributed 80% of the responsibility for the injuries to Mrs. Cipollone, and 20% of the responsibility to Liggett. Under New Jersey law, the jury's attribution of 80% responsibility to Mrs. Cipollone barred plaintiff's recovery on the failure-to-warn claim.

With respect to plaintiff's claim for breach of express warranty against Liggett, the jury provided the following answers to specific interrogatories:

13. Did Liggett make express warranties to consumers regarding the health aspects of its cigarettes? YES

14. ... [D]id any Liggett products used by Mrs. Cipollone breach that warranty? YES

15. ... [W]as Mrs. Cipollone's use of these products a proximate cause of her lung cancer and death? YES

16. ... [W]hat damages did Mrs. Cipollone sustain? $0.00

17. ... [W]hat damages did Mr. Cipollone sustain? $400,000.00

The court entered a judgment in accordance with the jury verdict. Liggett moves, pursuant to Fed.R.Civ.P. 50(b), for a judgment notwithstanding the verdict and, in the alternative, pursuant to Fed.R.Civ.P. 59(a), for a new trial. Plaintiff moves, pursuant to Fed.R.Civ.P. 59(a), for a new trial "on the issue of the quantum of compensatory damages sustained by Rose Cipollone during her lifetime." Additionally, plaintiff moves, pursuant to Fed.R.Civ.P. 59(e), to correct the judgment to add prejudgment interest and to amend the judgment to add damages under the New Jersey Consumer Fraud Act.

## DISCUSSION

I. *Liggett's motion*

A. Judgment notwithstanding the verdict

Liggett contends that the jury's finding of liability on plaintiff's express warranty claim cannot stand and that Liggett is entitled to judgment on that claim.

Initially, the court emphasizes that plaintiff's express warranty claim sounds in contract and is governed by the Uniform Commercial Code (UCC), as adopted by the New Jersey legislature. The parties treated the claim as being under the code in their trial briefs, *see* Trial Brief Submitted on behalf of Defendant Liggett Group, Inc. [hereinafter Liggett's Trial Brief] at 23–27; Plaintiff's Trial Brief at 47–58, and in their briefs on Liggett's motion for a directed verdict, *see, e.g.,* Motion for Directed Ver-

dict (Liggett) at 4–6.[1] The court, with this understanding, discusses Liggett's specific arguments.

This court must, deny Liggett's motion for judgment notwithstanding the verdict "unless the record is critically deficient of that minimum quantity of evidence from which the jury might reasonably afford relief." *Simone v. Golden Nugget Hotel and Casino,* 844 F.2d 1031, 1034 (3d Cir. 1988) (citation omitted).

### 1. Statute of limitations

■ Liggett argues that plaintiff's express warranty claim is barred by the four-year UCC statute of limitations, N.J.S.A. § 12A:2–725.[2] The court rejects Liggett's contention.

First, the court concludes that Liggett cannot raise this contention on its Rule 50(b) motion. Prior to trial, plaintiff moved to strike defendants' statute of limitations defenses. Plaintiff, in his brief in support of that motion, asserted that N.J.S.A. § 2A:14–2, the two-year statute of limitations for personal injury actions, applied to his claims. Memorandum in Support of Motion to Strike Defendants' Affirmative Defenses Based on Statute of Limitations at 9. Defendants, in opposition, stated:

> Plaintiff's motion addresses those causes of action with two year statutes of limitations deriving from the date when Mrs. Cipollone's lung cancer arose. Plaintiff's motion does not address defendants' statute of limitations defense respecting plaintiff's other claims with different periods of limitations. Thus, these claims are not now before this court.

Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment Striking Defendants' Affirmative Defenses Based on Statute of Limitations at 2. The court, in granting plaintiff's motion, stated, "The parties agree that the timeliness of plaintiff's claims must be measured by New Jersey's two-year statute of limitations, N.J.S.A. 2A:14–2." The court's order granting the motion did not distinguish among plaintiff's claims. Liggett did not move for reconsideration of the court's ruling nor did it move prior to trial for summary judgment on this ground. Additionally, during trial, defendants made an offer of proof on its statute of limitations defense, making no reference to the application of the UCC provision to plaintiff's express warranty claim.[3] Most tellingly, though, Liggett failed to raise this ground on its motion for directed verdict, despite raising several other arguments under the UCC. Motion for Directed Verdict (Liggett) at 4–6. Under these circumstances, Liggett may not raise this contention on its Rule 50(b) motion for judgment notwithstanding the verdict. *See Orlando v. Billcon Int'l, Inc.,* 822 F.2d 1294, 1298 (3d Cir.1987).

■ Additionally, Liggett's contention fails on its merits. New Jersey has traditionally applied different statutes of limitation to claims for personal injury and claims for property damage. *See Heavner v. Uniroyal, Inc.,* 63 N.J. 130, 143, 305 A.2d 412 (1973). The New Jersey Supreme Court has stated plainly that the adoption of the UCC was not intended to eliminate that dichotomy. Therefore, N.J.S.A. § 12A:2–725 does not apply to personal injury actions, even if arising out of a breach of contract for sale. *See id.* at 146, 305 A.2d 412. Plaintiff's claim, then, is not time-barred.

### 2. Notice

The court, for the reasons expressed in its prior opinion on defendants' motions for directed verdict, *Cipollone v. Liggett Group, Inc.,* 683 F.Supp. 1487, 1498 (D.N.J. 1988), concludes that plaintiff's express

---

1. As will be discussed below, *see infra* at 211, that the parties and the court applied the New Jersey two-year limitations period to this claim is not inconsistent with this characterization.

2. In addition to setting forth a four-year limitations period, the provision states, "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." N.J.S.A. § 12A:2–725(2).

3. In fact, defendants stated that N.J.S.A. 2A:14–2 is the "controlling statute of limitations." Offer of Proof on Statute of Limitations Defense at 2 n. 1.

warranty claim is not barred because of lack of notice under N.J.S.A. § 12A:2–607(3)(a).

### 3. Privity

■ Liggett contends that a personal injury action between a buyer and a manufacturer not in privity with the buyer cannot be brought under the provisions of the UCC, as interpreted by the New Jersey Supreme Court. *See Heavner v. Uniroyal, Inc.*, 63 N.J. 130, 154, 305 A.2d 412 (1973); *see also Spring Motors Distributors, Inc. v. Ford Motor Co.*, 98 N.J. 555, 570, 489 A.2d 660 (1985).

Liggett raised this argument, for the first time, on this motion for judgment notwithstanding the verdict. Although this purely legal question requires no factual development, Liggett did not move to dismiss this claim prior to trial. Liggett's trial brief does not mention the privity issue. Liggett's Trial Brief at 23–27 (discussing the express warranty claim). Most significantly, Liggett failed to raise this privity argument on its motion for directed verdict. See Motion for Directed Verdict (Liggett) at 4–6 (discussing the express warranty claim). Due to this failure, Liggett may not raise this argument on its Rule 50(b) motion. *See Orlando v. Billcon Int'l, Inc.*, 822 F.2d 1294, 1298 (3d Cir. 1987).[4]

The court, therefore, denies Liggett's motion on this ground, without consideration of the merits of Liggett's legal position.

### 4. Affirmation of fact

■ The court, for the reasons expressed in its prior opinion on defendants' motions for directed verdict, *Cipollone*, 683 F.Supp. at 1497, concludes that sufficient evidence exists to support the jury's finding that Liggett made "affirmations of fact" within the meaning of N.J.S.A. § 12A:2–313(1)(a). The jury found that

Liggett made such affirmations "regarding the health aspects of its cigarettes." Jury Interrogatory No. 13. This answer must be interpreted in light of the court's instructions, which referred to the alleged warranties as being "that the cigarettes that [Liggett] sold to Rose Cipollone would not cause injury or harm," Jury Charge at 47, and "about the safety of [Liggett's] cigarettes," *id.* at 50. Plaintiff was not required to demonstrate that Liggett made affirmations that its cigarettes would not cause lung cancer.

### 5. "Part of the basis of the bargain"

■ Liggett objected to the following passage from the court's charge on plaintiff's express warranty claim:

The law does not require plaintiff to show that Rose Cipollone specifically relied on Liggett's warranties.

Ordinarily a guarantee or promise in an advertisement or other description of the goods becomes part of the basis of the bargain if it would naturally induce the purchase of the product, and no particular reliance by the buyer on such statement needs to be shown. However, if the evidence establishes that the claimed statement cannot fairly be viewed as entering into the bargain— that is, that the statement would not naturally induce the purchase of the product—then no express warranty has been created.

N.J.S.A. § 12A:2–313(1)(a), the provision under which plaintiff's claim is brought, provides:

Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

At issue is a determination of when an affirmation or promise "becomes part of

---

4. At argument on its Rule 50(b) motion, Liggett contended that it did not raise the privity argument earlier because nobody had contended previously that the express warranty claim "was a true distinct contract case." Transcript of Proceedings (July 25, 1988) at 23: 4 to 6. As stated above, *see supra* at 210, however, Liggett, in its trial brief and motion for directed verdict, treated the claim as sounding in contract under the UCC.

the basis of the bargain." No New Jersey case interprets this language.[5]

Liggett contends that "the basis of the bargain" language indicates that reliance by the buyer is an aspect of an express warranty claim. Furthermore, Liggett contends that the jury's finding that Mrs. Cipollone voluntarily and unreasonably encountered a known risk by smoking cigarettes indicates, as a matter of fact, that Mrs. Cipollone did not rely on any Liggett warranty. Thus, Liggett seeks entry of judgment in its favor on this claim.

■ The court previously had indicated that reliance was an element of plaintiff's express warranty claim. The court, in its prior opinion on defendants' motions for directed verdict, suggested that reliance by a buyer was presumed by the fact of the making of the affirmation or promise but that the warrantor could rebut this presumption. *See Cipollone v. Liggett Group, Inc.,* 683 F.Supp. 1487, 1497 (D.N.J. 1988). The court, upon reconsideration of the language of and comments to § 12A:2–313(1)(a), concludes that a buyer's reliance on an affirmation or promise is irrelevant to a determination of whether that statement "becomes part of the basis of the bargain." [6]

Section 12A:2–313(1)(a) contains no reference to a buyer's reliance. This absence is particularly significant given that the predecessor to § 2–313 of the UCC, Uniform Sales Act § 12, expressly included reliance as a prerequisite to a finding that a statement was an express warranty. *See Adams v. Peter Tramontin Motor Sales, Inc.,* 42 N.J.Super. 313, 318, 126 A.2d 358 (App.Div.1956); Note, *The Meaning of "Part of the Basis of the Bargain,"* 19 Santa Clara L.Rev. 447, 449 (1979).[7]

The comments to § 12A:2–313 confirm that reliance by the buyer is no longer an element of an express warranty claim. Uniform Commercial Code Comment 3 states in part:

> In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of the goods; hence no particular reliance on such statements need be shown to weave them into the fabric of the agreement.

The ultimate inquiry, then, is whether an affirmation is part of the "fabric of the agreement"—a buyer need not show particular reliance to establish this fact. The comments, though referring to a rebuttable presumption that a seller's statements are "part of the basis of the bargain," contain no other reference to reliance. See Comment 3 ("[A]ny fact which is to take ... affirmations [by a seller about the goods during a bargain] out of the agreement

---

5. *Collins v. Uniroyal,* 126 N.J.Super. 401, 315 A.2d 30 (App.Div.1973), *aff'd,* 64 N.J. 260, 315 A.2d 16 (1974), did not interpret the "basis of the bargain" language. At issue in Collins was the meaning of a particular phrase of an express warranty. The court, in concluding that plaintiff had presented sufficient evidence to support her interpretation of the phrase, discussed advertisements that shed light on the phrase's meaning. The court's statement in this context, concerning decedent's reliance on the advertisement, *id.* at 408, 315 A.2d 30, does not constitute an interpretation of the "basis of the bargain" language in § 2–313.

6. The court's reconsideration does not call into question its prior ruling denying Liggett's motion for directed verdict on plaintiff's express warranty claim. The court stated that, even considering reliance as an element of the claim, that plaintiff had presented evidence from which the jury could conclude that Mrs. Cipollone had relied on affirmations contained in Liggett's advertisements.

7. Liggett may not argue, on this Rule 50(b) motion, that pre-UCC New Jersey law governs the question of reliance. Liggett, throughout its papers on its motion for directed verdict, contended that the UCC "basis of the bargain" language controlled. See Motion for Directed Verdict (Liggett) at 6; Reply Memorandum of Defendant Liggett in Support of its Motion for Directed Verdict at 9 & n. 5 (contending that the "modern Code's" test applied and distinguishing cases cited by plaintiff that did not interpret the "Code law of New Jersey"); Memorandum of Liggett Group, Inc. in Support of its Renewed Motion for a Directed Verdict on Plaintiff's Express Warranty Claim at 1–2 & n. 1. Moreover, as stated above, *see supra* at 210, both parties have treated plaintiff's claim, throughout the proceedings, as being governed by the UCC. Liggett may not offer a different argument on its motion for judgment notwithstanding the verdict.

requires clear affirmative proof."); Comment 6 (referring to the "presumption" that "any affirmation of fact is intended to become part of the basis of the bargain"); Comment 8 ("What statements of the seller have in the circumstances and in objective judgment become part of the basis of the bargain? As indicated above, all of the statements of the seller do so unless good reason is shown to the contrary.")

The comments indicate that § 12A:2–313(1)(a) centers on whether the agreement or bargain between the warrantor and buyer, objectively viewed, contains the affirmations or promises—not on whether a buyer's purchasing decision, subjectively viewed, depends on the statements. In the court's view, a statement in an advertisement becomes part of the basis of the bargain if, objectively viewed, the statement would tend to induce the purchase of the advertised product. Whether or not the statement actually induced a particular purchase is not relevant to a determination of whether the statement may constitute an express warranty.

This reading of § 12A:2–313(1)(a) is consistent with § 12A:2–715(2)(b), which permits recovery of consequential damages proximately resulting from a breach of warranty. As discussed below, see infra at 25–27, the comments to § 2–715 make plain that a buyer with actual knowledge of a product's defect may not recover consequential damages in contract. This limitation on damages would be unnecessary if a buyer's actual knowledge would preclude a finding of liability under § 2–313—under Liggett's view, an action by such a buyer would never reach the damages stage. The Code contemplates that a buyer who uses a product with knowledge of its warranty-breaching defect may still recover for the breach, but only standard contract damages under § 2–714. Consistent with fundamental principles of contract law, the Code drafters intended that the contracting parties be viewed objectively in assessing the meaning of their agreement; once a breach is established, however, a party's

subjective intent and actual conduct is considered in determining the reasonable damages recoverable for such a breach.

The court is aware that many courts and commentators have interpreted the "part of the basis of the bargain" language as containing a reliance requirement. *See, e.g.,* R. Anderson, *Uniform Commercial Code* § 2–313:39 at 32 (1983 & Supp.1987); W. Hawkland, *Uniform Commercial Code Series* § 2–313:05 at 299–300 (1983 & Supp. 1987); J. White and R. Summers, *Uniform Commercial Code* § 9–4 at 338–39 (2d ed. 1980), and cases cited therein. Nonetheless, this court, in predicting how the New Jersey courts will interpret this provision, adopts the view of the statute most consistent with its language and legislative commentary.

The court, again, overrules Liggett's objection to the court's charge on the "basis of the bargain" requirement.

### 6. Proximate cause

The jury found that Mrs. Cipollone's use of Liggett cigarettes that breached its express warranties proximately caused Mrs. Cipollone's lung cancer and death. Jury Interrogatory No. 15. The court, in its previous opinion on defendants' motions for directed verdict, concluded that plaintiff had presented sufficient evidence to support such a finding. *Cipollone v. Liggett Group, Inc.,* 683 F.Supp. 1487, 1497 (D.N.J. 1988). At a minimum, plaintiff presented evidence that Mrs. Cipollone smoked cigarettes that were in breach of warranty from 1952 until 1966.[8] The testimony of Dr. Jeffrey Harris, one of plaintiff's experts, supports a jury finding that the use of those products was a "substantial contributing factor" in bringing about Mrs. Cipollone's illness and death. The jury could reasonably conclude that smoking of a particular brand over a number of years was a proximate cause of Mrs. Cipollone's illness and death.

---

**8.** In 1952, Liggett ran its "no adverse effects" advertisements in Life magazine. Plaintiff presented evidence from which the jury could

have concluded that such advertisements contained express warranties, and that Liggett's products breached such warranties.

### 7. Contributory fault

Liggett argues that the jury's determination that Mrs. Cipollone was 80% responsible for any injuries resulting from her smoking, Jury Interrogatory No. 12, bars recovery on plaintiff's express warranty claim.

■ Initially, the court must consider whether Liggett failed to properly raise this argument earlier in the proceedings.

Liggett in its trial brief, did not raise contributory fault specifically with respect to plaintiff's express warranty claim, see Liggett's Trial Brief at 23–27, although it did raise contributory fault generally as to all claims, see id. at 32. Liggett, in moving for a directed verdict, asserted "the primary assumption of risk doctrine" generally as a defense to all of plaintiff's claims. See Motion for Directed Verdict (Liggett) at 11.

Pursuant to the court's request, defendants jointly submitted proposed jury instructions and a proposed verdict form. With respect to plaintiff's failure-to-warn claim, defendants' proposed verdict form contained specific questions regarding Mrs. Cipollone's contributory fault, see Defendants' Proposed Verdict Form at questions 5–7, and defendants submitted proposed instructions on comparative fault as to the failure-to-warn claim, see Defendants' Jury Instructions at requested instructions 31–36. Defendants submitted neither jury interrogatories nor instructions regarding comparative fault on plaintiff's express warranty claim.[9]

The court, after consideration of the parties' initial proposals, distributed a draft jury charge. The charge contained an instruction as to comparative fault only with respect to plaintiff's failure-to-warn claim. The proposed charge stated, "This defense applies only to plaintiff's claim that Liggett failed to warn." Pursuant to the court's request, defendants submitted proposed changes to the court's draft charge. Defendants proposed no change to the court's statement limiting the comparative fault defense to plaintiff's failure-to-warn claim. See Defendants' Proposed Changes to Cipollone Jury Charge at 39.

On May 27, 1988, the court conducted a conference regarding the parties' proposed changes to the draft charge. The conference began in the morning and continued until late afternoon, at which the time the court stated, "All right. I understand the claims. As always, I will take it under advisement ... Let me look through. Is there anything else anybody considers to be substantial here?" Transcript of Proceedings (May 27, 1988 Afternoon Session) at 12014: 2 to 8. After the parties raised several matters, the court stated, "Let us get back to scheduling." The following colloquy then took place:

MR. KEARNEY: We—on express warranty I would like to be able to submit a short letter on two issues: One is contributory negligence as a defense and that the warnings don't apply—

THE COURT: You are right on number two. I will not charge punitive damages on express warranty. It is not an intentional tort, it is a breach of contract, so that is taken care of, and I understand what the other problem is and I will think about it.

Id. at 12025:18 to 12026:1.

After a holiday weekend, the court distributed a revised draft charge, containing changes discussed at the May 27 conference. Liggett, at the court's request, submitted further objections to "new" problems with the revised draft—this submission did not mention the court's failure to charge contributory fault as a defense to plaintiff's express warranty claim. See Letter of James V. Kearney (June 2, 1988).

On the morning of June 7, 1988, immediately preceding the court's reading of the charge to the jury, the parties filed written objections to the court's instructions. The court had directed the parties to make such a filing, for the purpose of memorializing their respective requests and objections.

---

**9.** Liggett submitted a proposed instruction on primary assumption of risk as a defense to all of plaintiff's claims, see requested instruction 60, and its proposed verdict form contained a question (No. 25) on this defense.

The court did not review those submissions prior to charging the jury—a fact known to defense counsel. In that filing, defendants objected to the court's instruction that the affirmative defense based on Mrs. Cipollone's conduct "applies only to plaintiff's claim that Liggett failed to warn and is not a defense to the other claims asserted by plaintiff." Defendants explained:

> Defendants object to and except from the Court's failure to instruct the jury that contributory fault is a defense to a claim for breach of express warranty. *Maiorino v. Weco Prods. Co.*, 45 N.J. 570 [214 A.2d 18] (1965); *Cintrone v. Hertz Truck Leasing*, 45 N.J. 434 [212 A.2d 769] (1965). The jury should be instructed that contributory fault is a defense to plaintiff's express warranty claim, and that if the jury finds that Mrs. Cipollone was contributorily at fault in failing to exercise [sic] then plaintiff is barred from recovery.

Defendants' Objections and Exceptions to Court's Jury Charge and Jury Interrogatories as Given at 32–33.

Given this background, the court concludes that Liggett is barred from arguing this legal contention on this motion. Liggett did not raise the argument that contributory fault applies to plaintiff's express warranty claim until Mr. Kearney's statement near the close of the May 27, 1988 charge conference.[10] At the very least, Liggett should have raised its position regarding contributory fault in its initial proposed jury instructions and verdict form.[11] By submitting a proposed instruction on comparative fault only as to the failure-to-warn claim, Liggett confirmed the court's understanding that this defense had no application to plaintiff's other claims. The

court revealed its understanding of the limited applicability of the defense in its draft charge. Liggett offered no objection to the court's draft instruction limiting the defense to failure-to-warn.

Not until the end of a day-long conference discussing proposed changes to the draft charge did Liggett raise this point. The court's response at that time plainly reflected a misunderstanding of Liggett's point. The court stated that it understood what "the problem" was and would think about it—but Liggett had yet to raise contributory fault as a defense on this claim. Nonetheless, Liggett, after having reviewed the court's revised draft charge, submitted further written objection without mention of the contributory fault question. Liggett, in its filing on the date of the charge to complete the record, for the first time articulated its legal position that contributory fault should have been charged as a defense to the express warranty claim but otherwise failed to bring that contention to the attention of the court.

Liggett—in order to first raise a fundamental legal position such as the assertion of an affirmative defense to a claim—had to do better than to orally mention it at the close of the May 27 conference and then, after receiving a cryptic response from the court, fail to raise it until the filing of formal objections completing the record. Liggett's conduct led the court to believe that the parties agreed that contributory fault was a defense only to the failure-to-warn claim. Additionally, Liggett offers no justification for its failure to raise its legal position prior to the May 27 conference. The court concludes that Liggett may not now raise—in essence, for the first

---

**10.** Liggett's trial brief, though referring to comparative fault as a bar to all claims, acknowledges that the defense applies to "strict product liability cases" and provides no authority for applying the defense to an express warranty claim. Liggett's reference in its motion for directed verdict and its proposed jury instructions and verdict form to "primary assumption of risk" as to all claims represents a different legal contention, as recognized by the fact that Liggett made separate submissions as to comparative fault on plaintiff's failure-to-warn claim.

**11.** Liggett contends that it could not have raised comparative fault on its motion for directed verdict "because it was an issue of fact whether there is comparative fault." Transcript of Proceedings (July 25, 1988) at 17: 16 to 19. Though Liggett in that motion presented grounds which turned on the factual question of Mrs. Cipollone's awareness of the risks of smoking, *see* Motion for Directed Verdict (Liggett) at ¶¶ 2(c), 7, Liggett was not required to raise this argument on its motion for directed verdict.

time—this legal contention on a motion for judgment notwithstanding the verdict.

■ Alternatively, the court rejects Liggett's legal position on its merits. Liggett contends that plaintiff's express warranty claim, as pursued at trial and submitted to the jury, was not a UCC contract claim but a claim sounding in tort; as such, Liggett maintains, the tort principle of contributory fault applies. See Memorandum in Support of the Motion of Defendant Liggett Group Inc. for Judgment N.O.V. at 16–17; Reply Memorandum in Support at 11. The court has rejected Liggett's characterization of plaintiff's express warranty claim as sounding in tort. *See supra* at 210. The UCC, the law governing plaintiff's claim, provides no affirmative defense to liability for breach of warranty based on contributory fault. Rather, the Code considers a plaintiff's conduct in determining whether an individual may recover consequential damages. *See* N.J.S.A. § 12A:2–715(2)(b). *See infra* at 220–21.

*Cintrone v. Hertz Truck Leasing & Rental Service*, 45 N.J. 434, 458, 212 A.2d 769 (1965) and *Maiorino v. Weco Prods. Co.*, 45 N.J. 570, 573–74, 214 A.2d 18 (1965), cited by Liggett, apply contributory fault as a defense to implied warranty claims.[12] Though these opinions speak broadly about the applicability of this defense to all warranty actions, this court is convinced that the New Jersey Supreme Court, if faced squarely with an express warranty claim under the Code, would follow the Code's plain intent to consider plaintiff's conduct only upon a determination of damages and not as a defense to liability. *See infra* at 220–21.

12. In *Cintrone*, the complaint did not specify whether the alleged warranty was express or implied. 45 N.J. at 438, 212 A.2d 769. On appeal, however, plaintiff argued his claim as a breach of implied warranty of fitness for use. *Id.* at 445, 212 A.2d 769.

13. Liggett's argument, though seemingly addressed to the propriety of the jury's damage award, is properly part of Liggett's motion for judgment notwithstanding the verdict. Plaintiff introduced no evidence to support an award of contract damages under N.J.S.A.

The court, for alternative reasons, denies Liggett's motion on the ground of the affirmative defense of contributory fault.

### 8. Consequential damages

■ Liggett argues that the jury's finding that Liggett's breach of warranty proximately caused Mrs. Cipollone's injuries cannot stand. Put differently, Liggett contends that the evidence does not support plaintiff's recovery of consequential damages. N.J.S.A. § 12A:2–715(2)(b) permits recovery of consequential damages in the form of "injury to person or property proximately resulting from any breach of warranty." As the court will develop more fully below, *see infra* at 220–21, if a buyer uses a product with knowledge of its warranty-breaching defect, any personal injuries arising from that use did not "proximately result" from the breach of warranty. Liggett contends that the jury's finding that Mrs. Cipollone "voluntarily and unreasonably encounter[ed] a known danger by smoking cigarettes," Jury Interrogatory No. 10, precludes plaintiff from recovering consequential damages under the Code.[13]

Though the court agrees that § 12A:2–715(2)(b) governs recovery of consequential damages on plaintiff's warranty claim,[14] *see infra* at 220–21, the court concludes that Liggett may not raise this contention on its Rule 50(b) motion. Liggett, on the current motion, raises and articulates for the first time the position that, under § 12A:2–715(2)(b), as interpreted in its comments, Mrs. Cipollone's conduct is relevant to a consideration of whether her injuries proximately resulted from Liggett's breach. Liggett did not raise this point in its trial brief,[15] nor in its motion for

§ 12A:2–714(2). Because plaintiff seeks only consequential damages, a ruling that these damages were not recoverable would warrant entry of judgment for Liggett.

14. The court does not pass on the applicability of § 12A:2–715(2)(b) to the facts of this case. The jury was not charged under this provision.

15. Liggett's trial brief does refer to § 12A:2–715(2)(b) but makes no mention of the relevance of plaintiff's conduct to a determination of proximate cause.

directed verdict.[16] Most significantly, Liggett never requested such a charge on the basis now articulated—not in its proposed jury instructions, not in its proposed changes to the court's initial draft instructions,[17] not at the May 27, 1988 charge conference, not in Liggett's June 2, 1988 letter containing further objections, and not even in its formal written objection completing the record.[18]

Liggett, though citing § 2–715(2)(b) at certain times, never meaningfully brought before the court the issue it now raises—that Mrs. Cipollone's alleged knowledge of the defects in Liggett's cigarettes precludes recovery of consequential damages on the express warranty claim. In fairness to the court and to the plaintiff, Liggett may not raise this issue now.

This case had extensive briefing throughout the trial and the charge conference was the longest and most detailed one this court has ever conducted. Counsel had the unique luxury of having the court's proposed charge in writing well in advance of its submission to the jury, and all counsel had more than an ample opportunity to study it, object and request revisions. It would be unfair to set aside the jury's verdict for a reason that could have been presented, discussed, and resolved before the verdict and not after.

The court denies Liggett's motion on this ground, without consideration of the merits of Liggett's legal position.

\* \* \* \* \* \*

The court denies Liggett's motion for judgment notwithstanding the verdict.

**B. New trial**

■ Liggett moves in the alternative, pursuant to Fed.R.Civ.P. 59(a), for a new trial. The authority to grant such relief "is confided almost entirely to the exercise of discretion on the part of the trial court." *Roebuck v. Drexel Univ.* 852 F.2d 715, 735–36 (3d Cir.1988) (citation omitted). The court, in its discretion, may grant a new trial despite a party's failure to properly preserve its arguments at the initial trial.

> [W]here the undisputed evidence results in a verdict that is totally without legal support justice requires a new trial despite counsel's failure to move for a directed verdict prior to submission of the case to the jury.

*Cowger v. Arnold,* 460 F.2d 219, 222 (3d Cir.1972) (citing *Oliveras v. American Export Isbrandsten Lines, Inc.,* 431 F.2d 814, 817 (2d Cir.1970)); *see Della Grotta v. State of Rhode Island,* 781 F.2d 343, 350 (1st Cir.1986) (following *Oliveras* and *Cowger*).

Under the circumstances of this litigation, the court declines to grant a new trial. The jury verdict holding Liggett liable for breach of express warranty, arrived at pursuant to the court's charge, is supported by evidence in the record. Liggett, however, now argues several legal points not previously raised. The court afforded all of the parties ample opportunity to brief and argue legal questions throughout this difficult matter. Liggett often exercised its rights in this regard, filing numerous pretrial motions and raising, almost daily, legal issues during trial. Furthermore, because of the importance and complexity of the case, the court provided the parties

---

**16.** Because a factual issue was present regarding Mrs. Cipollone's conduct, Liggett's failure to raise this contention on its motion does not *necessarily* bar its being raised on this motion.

**17.** Liggett suggested elimination of the court's proposed proximate cause charge and stated that it was "entitled to a proximate cause instruction, one that includes the 'knowledgeable user' rule as articulated in the *Vallillo* case." Defendants' Footnoted Comments and Explanations for Requested Changes to Cipollone Jury Charge at ¶ 30. *Vallillo v. Muskin Corp.,* 212 N.J.Super. 155, 514 A.2d 528 (App.Div.1986), dealt only with proof of proximate cause in a

failure-to-warn case. Liggett did not articulate the basis for its request, as set forth in the briefs on this motion.

**18.** Liggett did file a formal written objection to the court's proximate cause charge on express warranty, stating "There is no basis for limiting the proximate cause inquiry to the medical causation 'stage.' Plaintiff must prove that plaintiff's injuries were proximately caused by the breach of warranty. N.J.S.A. 12A:2–715." Liggett did not spell out the legal position articulated in its brief on the current motion.

several chances to argue their legal positions in connection with the court's instructions to the jury. Given the nature of these proceedings, Liggett does not offer an adequate explanation for its failure to seriously raise these legal contentions prior to these motions. The court, given this failure, should not be required to commit the substantial amount of time and resources necessary to retry the express warranty claim or place that burden upon the plaintiff.

The court, in the exercise of its discretion, denies Liggett's motion for new trial.

## II. *Plaintiff's motions*

### A. Motion for partial new trial

■ Plaintiff moves, pursuant to Fed. R.Civ.P. 59(a), for a partial new trial "on the issue of the quantum of compensatory damages sustained by Rose Cipollone during her lifetime." Plaintiff contends that, given the jury's finding that Liggett was liable for breach of warranty, the subsequent finding that Mrs. Cipollone suffered no damages is not supported by the evidence. Furthermore, plaintiff argues that a new trial should be limited only to the amount of damages sustained by Mrs. Cipollone.

First, the court holds that the jury's award of no damages to Mrs. Cipollone is unsupported by the record. A court may set aside an award of damages as insufficient only "where the evidence indicates that the jury awarded damages in an amount 'substantially less than was unquestionably proven by plaintiff's uncontradicted and undisputed evidence.' " *Semper v. Santos,* 845 F.2d 1233, 1236 (3d Cir.1988) (citation omitted). In this trial, the parties stipulated that Mrs. Cipollone incurred $124,500 in reasonable medical expenses. Additionally, plaintiff unquestionably proved, by uncontradicted and undis-

puted evidence, that Mrs. Cipollone suffered from lung cancer for many months prior to her death. The jury's award of no damages to Mrs. Cipollone cannot be reconciled with these proofs.

Liggett contends that the court, in the exercise of its duty to reconcile ostensibly inconsistent verdicts, must conclude that the jury's award of $400,000 to Mr. Cipollone encompassed any damages that the jury determined were sustained by Mrs. Cipollone. The court is under a duty to harmonize the jury's answers to special interrogatories, if permitted by a fair reading. *See Gallick v. Baltimore & Ohio R.R. Co.,* 372 U.S. 108, 118, 83 S.Ct. 659, 665, 9 L.Ed.2d 618 (1963); *Anastasio v. Schering Corp.,* 838 F.2d 701, 710 (3d Cir. 1988). However, Liggett's reading of the jury's answers is not "fair," as it requires a finding that the jury disregarded the court's plain instructions. The court instructed the jury that two types of compensatory damages could be awarded in this case—those suffered by Mrs. Cipollone and those suffered by Mr. Cipollone.[19] Most significantly, Liggett asks the court to "harmonize" the jury's findings by concluding that the jury ignored the fact that the court propounded separate interrogatories as to damages sustained by Mrs. Cipollone and Mr. Cipollone.

The jury's award of no damages to Mrs. Cipollone is contrary to the plain evidence. However, the court cannot grant the relief requested by plaintiff—a partial new trial limited to the amount of damages sustained by Mrs. Cipollone during her lifetime.

First, any retrial would have to include the question of the amount of damages sustained by Mr. Cipollone. A court may order a partial new trial only if "it clearly appears that the issue to be retried is so distinct and separable from the others that

---

**19.** The court's compensatory damage instruction began as follows: "There are two types of compensatory damages applicable in this case. The first type deals with damages sustained by Mrs. Cipollone during her lifetime which resulted from defendants' activities." The court then explained the types of damage that Mrs. Cipollone claimed to have sustained and that Mr.

Cipollone could receive compensation for his wife's injuries. Next, the court stated, "Under New Jersey law, Mr. Cipollone may also be awarded damages for his own personal losses." The court then explained the nature of the losses for which Mr. Cipollone could recover personally.

a trial of it alone may be had without injustice." *See Vizzini v. Ford Motor Co.,* 569 F.2d 754, 760 (3d Cir.1977) (quoting *Gasoline Products Co. v. Champlin Refining Co.,* 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931)). Furthermore, a partial new trial should be granted "only in those cases where it is plain that the error which has crept into one element of the verdict did not in any way affect the determination of any other issue." *See Vizzini,* 569 F.2d at 760 (*quoting Romer v. Baldwin,* 317 F.2d 919, 922–23 (3d Cir.1963)). As stated above, the court cannot find with any degree of probability that the jury's award to Mr. Cipollone reflected Mrs. Cipollone's damages. *See supra* at 219. However, the court cannot find that it is "plain" that the jury's error with regard to Mrs. Cipollone's damages "did not in any way affect" its determination of Mr. Cipollone's damages. Some of the damages awarded to Mr. Cipollone may reflect some of the injuries sustained by Mrs. Cipollone.

Additionally, because of the law that would be applied to damages at retrial, the court concludes that any retrial would necessarily extend to questions of liability.

The UCC, as adopted by the New Jersey legislature, would determine damages recoverable by plaintiff on his express warranty claim. Damages for breach of warranty are measured by "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." N.J.S.A. § 12A:2–714(2). Additionally, consequential damages are recoverable under § 12A:2–715. *See* N.J.S.A. § 12A:2–714(3). Section 12A:2–715(2)(b) provides, "Consequential damages resulting from the seller's breach include injury to person or property proximately resulting from any breach of warranty." The damages sought by plaintiff at the initial trial fall within this provision.[20]

Determination of consequential damages under this provision involves the question of Mrs. Cipollone's knowledge of the warranty-breaching defect in Liggett's products. The comments to § 12A:2–715 make this plain.

> At common law and under the Uniform Sales Act, the courts have not been able to agree as to whether injuries to persons or property resulting from defective goods were too remote to justify the imposition of consequential damages against the seller. Subsection 2–715(2)(b) resolves the matter by allowing consequential damages if the injury to person or property proximately results from any breach of warranty. Thus, if the buyer's own fault or negligence contributes to the injury (e.g., by using the goods with knowledge of their defects), he cannot recover consequential damages, because such damages are not proximately due to the breach of warranty.

New Jersey Study Comment ¶ 1.

> Subsection (2)(b) states the usual rule as to breach of warranty, allowing recovery for injuries "proximately" resulting from the breach. Where the injury involved follows the use of goods without discovery of the defect causing the damage, the question of "proximate" cause turns on whether it was reasonable for the buyer to use the goods without such inspection as would have revealed the defects. If it was not reasonable for him to do so, or if he did in fact discover the defect prior to his use, the injury would not proximately result from the breach of warranty.

Uniform Commercial Code Comment ¶ 5. *See Devaney v. Sarno,* 122 N.J.Super. 99, 107, 299 A.2d 95 (Law Div.), *rev'd on other grounds,* 125 N.J.Super. 414, 311 A.2d 208 (App.Div.1973).[21]

---

**20.** The court's ruling that the consequential damage provisions of the UCC would govern any retrial is not inconsistent with the court's holding that Liggett has waived its right to raise this argument on its post-trial motions. Liggett's failure to properly raise this position at an initial trial would not preclude it from asserting it at retrial.

**21.** Plaintiff points out that the New Jersey Study Comment was taken from a 1958 treatise whose author deleted the quoted portion in his 1976

Given that Mrs. Cipollone's knowledge of the defects contained in Liggett's product will be at issue in any second trial on damages, the court concludes that any retrial should extend to Liggett's liability as well. A trier of fact, in determining whether consequential damages may be recovered, will have to consider the content and nature of Liggett's warranties and Mrs. Cipollone's understanding of the warranties. The retrial will go beyond the narrow question of the nature of Mrs. Cipollone's injuries. The court cannot state that "it clearly appears" that the issue of consequential damages is "so distinct and separable" from the issues surrounding Liggett's liability that a trial of damages alone may be had "without injustice." *Vizzini,* 569 F.2d at 760.

The court cannot grant plaintiff's requested relief—a partial new trial solely on the issue of the quantum of compensatory damages sustained by Rose Cipollone during her lifetime. Therefore, the court denies plaintiff's motion.

**B. Prejudgment interest**

 Plaintiff moves, pursuant to Fed. R.Civ.P. 59(e) to correct the judgment to include prejudgment interest in the amount of $223,237.39. Plaintiff, as authority for this relief, invokes N.J.Ct.R. 4:42–11(b):

> *Tort Actions.* Except where provided by statute with respect to a public entity or employee, and except as otherwise provided by law, the court shall, in tort actions, including products liability actions, include in the judgment simple interest, calculated as hereafter provided, from the date of the institution of the action or from a date 6 months after the date the cause of action arises, whichever is later, provided that in exceptional cases the court may suspend the running of such prejudgment interest.

Plaintiff contends that this provision applies to any "products liability" action, including a claim for breach of express warranty. The only New Jersey case facing the question supports plaintiff's position. *See Collins v. Uniroyal, Inc.,* 130 N.J.Super. 169, 325 A.2d 854 (Law Div.1974). Because *Collins* is contrary to the plain language of the provision, the court predicts that the New Jersey Supreme Court would reach a different result.

Rule 4:42–11(b), captioned "Tort actions," applies "in tort actions, including products liability actions." The *Collins* court reasoned that the phrase "including products liability actions" is redundant unless it refers to non-tort products liability actions. This interpretation, however, ignores the rule's characterization as applying to tort actions. Additionally, it places a strained reading on "including"—the legislature, if it wished to extend the reach of the rule to product liability claims sounding in contract, could have plainly done so. More likely, the legislature intended to emphasize that the rule applied to products liability tort cases.

The *Collins* court also stated that one policy behind the rule—"to inhibit delay, induce settlement, assist effective court management and yield a greater measure of justice to litigants"—would be best served by an expansive interpretation. Though the furtherance of such policies in any lawsuit is desirable, the New Jersey legislature, for its own reasons, limited Rule 4:42–11(b) to tort actions. The legislature could have extended the rule to all actions for personal injuries, regardless of the legal theory. This court predicts that the New Jersey Supreme Court would not apply the tort rule to plaintiff's contract claim for breach of express warranty.

However, New Jersey does permit an award of prejudgment interest in contract actions based on equitable principles. *See W.A. Wright, Inc. v. KDI Sylvan Pools, Inc.,* 746 F.2d 215, 219 (3d Cir.1984); *Foley*

revision. *Compare* W. Hawkland, *Sales and Bulk Sales,* 139–140 (1958) *with* W. Hawkland, *Sales and Bulk Sales,* 175–76 (3d ed. 1976). This does not alter the court's prediction of the New Jersey Supreme Court's interpretation of § 2–715(2)(b). No subsequent New Jersey case law indicates that the original Study Comment will be disregarded. Furthermore, the Uniform Commercial Code Comment, not premised on Prof. Hawkland's work, mirrors the New Jersey Study Comment on this point.

*Mach. Co. v. Amland Contractors, Inc.,* 209 N.J.Super. 70, 78, 506 A.2d 1263 (App. Div.1986); *Ellmex Constr. Co. v. Republic Ins. Co.,* 202 N.J.Super. 195, 211–212, 494 A.2d 339 (App.Div.1985). Plaintiff, though acknowledging the court's authority in this regard, offers no basis for an equitable award of prejudgment interest. Letter of Marc Z. Edell and Alan M. Darnell (July 19, 1988) at 3. The court notes that one of the purposes behind an award of prejudgment interest, complete compensation of the plaintiff, would not be furthered by an award to Mr. Cipollone, because presumably a substantial portion of the jury award represented compensation for loss of future services from his wife. *See Universal Computers Ltd. v. Datamedia Corp.,* 653 F.Supp. 518, 530–32 (D.N.J.1987) (declining to award prejudgment interest due to a jury's failure to distinguish between pre- and post-judgment injuries).[22] Under these circumstances, the court declines to award prejudgment interest on Mr. Cipollone's recovery.

The court denies plaintiff's motion to correct the judgment to include prejudgment interest.

C. Consumer Fraud Act

■ Plaintiff moves, pursuant to Fed. R.Civ.P. 59(e), to amend the judgment to add damages under the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8–1 to –38. Initially, the court questions whether plaintiff has waived this argument by virtue of its failure to seriously raise its statutory claims earlier in the proceedings. Though plaintiff referred to the Act in its trial brief, *see* Plaintiff's Trial Brief at 43–45, plaintiff did not seriously raise its claims under the Act until well into the trial. This conduct prevented Liggett from moving and the court from considering several legal questions regarding the applicability of the Act to this action. Nonetheless, the court does not rule on the waiver point, nor on the numerous legal arguments raised by this motion, because the relief requested—amendment of the judgment to reflect damages under the Act —cannot be granted.

Plaintiff's contention, in essence, is that the jury's finding that Liggett was liable for breach of an express warranty, in and of itself, constitutes the factual predicate necessary to recover damages under the Act. However, although a breach of warranty may, under certain circumstances, violate the Consumer Fraud Act, "a breach of warranty alone does not violate a consumer protection statute." *D'Ercole Sales, Inc. v. Fruehauf Corp.,* 206 N.J.Super. 11, 25, 26, 30, 501 A.2d 990 (App.Div. 1985). The jury's verdict, standing alone, provides no basis for plaintiff's recovery of damages under the Act. On the contrary, the jury's specific finding of no fraudulent misrepresentation probably negates such an award.

The court denies plaintiff's motion to amend the judgment to add damages under the New Jersey Consumer Fraud Act.

CONCLUSION

The court denies Liggett's motion for judgment notwithstanding the verdict. Furthermore, the court denies Liggett's alternative request for a new trial.

The court denies plaintiff's motion for a partial new trial on the issue of the quantum of compensatory damages sustained by Rose Cipollone during her lifetime. The court denies plaintiff's motion to correct the judgment to add prejudgment interest. The court denies plaintiff's motion to

---

**22.** *Ruff v. Weintraub,* 105 N.J. 233, 519 A.2d 1384 (1987), does not mandate a contrary result. *Ruff* rejected the possibility that the existence of a verdict consisting of mostly future damages constituted "exceptional circumstances" warranting the denial of prejudgment interest under Rule 4:42–11(b) in a tort claim. *Id.* at 245. The court reasoned that the second purpose of prejudgment interest—encouraging settlement— was furthered by application of the rule to claims for future damages and, therefore, that the legislative preference for awarding prejudgment interest to successful tort plaintiffs should be respected. *Id.* at 244–45, 519 A.2d 1384; *see Salas v. Wang,* 846 F.2d 897, 909–910 (3d Cir. 1988). *Ruff* does not hold that a court should not consider the need for compensation when exercising its discretion with respect to prejudgment interest awards not governed by the rule.

amend the judgment to add damages under the New Jersey Consumer Fraud Act.