851 F.2d 774
 57 USLW 2148, 26 Fed. R. Evid. Serv. 812,
Prod.Liab.Rep.(CCH)P 11,884
 Lane M. McGONIGAL, Individually and as Father and Next
Friend of Kevin M. McGonigal and Connie L.
McGonigal, etc., et al., Plaintiff-Appellee,
v.
GEARHART INDUSTRIES, INC., A Corporation, et al., Defendants,
Day & Zimmermann, Inc., A Corporation, c/o Lone Star
Ammunition Plant, Defendant-Appellant.
 No. 87-2587.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 11, 1988.
Rehearing Denied Sept. 8, 1988.
 
 John R. Mercy, Norman C. Russell, Atchley, Russell, Waldrop & Hlavinka, Texarkana, Tex., for defendant-appellant.
 Nicholas Gilman, Wilton Jeremain Smith, Smiley, Olson & Gilman, Washington, D.C., for plaintiff-appellee.
 Appeal from the United States District Court for the Eastern District of Texas.
 Before RUBIN, KING and WILLIAMS, Circuit Judges.
 JERRE S. WILLIAMS, Circuit Judge:
 
 
 1
 This personal injury diversity suit is before us a second time. It was originally filed against the manufacturer and the assembler of a grenade which exploded prematurely, injuring two United States servicemen. In McGonigal v. Gearhart Industries, 788 F.2d 321 (5th Cir.1986) ("McGonigal I "), we reversed a directed verdict in favor of the assembler, and remanded for a new trial based on negligence. The jury in the second trial found the assembler negligent, and judgment was awarded in favor of the injured servicemen. The assembler now appeals to this Court claiming various errors in the trial. We affirm the district court judgment.
 
 I. Facts and Procedural History
 
 2
 Sergeant Lane M. McGonigal and Sergeant Mark M. Thompson, members of the 82nd Airborne Division, were severely injured when an M67 hand grenade exploded during grenade requalification training at Fort Bragg, North Carolina, on September 2, 1981. Sergeant McGonigal's right arm was blown off in the accident. His right eye was destroyed by shrapnel, which remains embedded in his brain. Sergeant Thompson's femoral artery was severed by shrapnel entering his right leg in the groin area.
 
 
 3
 McGonigal, his wife Donna L. McGonigal, and Thompson ("the McGonigals") sued Gearhart Industries ("Gearhart") the manufacturer of the grenade delay fuse, and Day & Zimmermann, Inc. ("D & Z"), the assembler of the grenade, on theories of strict product liability and negligence. Gearhart filed a third party complaint against Pengo Industries, Inc. ("Pengo"), to whom Gearhart in 1977 had transferred certain properties and liabilities. The United States intervened under the Medical Care Recovery Act, 42 U.S.C. Secs. 2651-2653 (1982), against Gearhart for $56,286.30. Jurisdiction was properly based upon federal diversity pursuant to 28 U.S.C. Sec. 1332 (1982).[1]
 
 
 4
 On the third day of trial, Pengo and Gearhart settled with the United States and the McGonigals. D & Z and the McGonigals remained in the suit. They stipulated that the delay fuse was defective and that the defect had occurred at Gearhart during the manufacturing process. The McGonigals then continued at trial against D & Z based solely on the negligence claim. D & Z moved for a directed verdict after the McGonigals rested their case, claiming no direct evidence of negligence had been presented. The court granted the motion and dismissed the case.
 
 
 5
 The McGonigals appealed to this Court in McGonigal I, supra. We held that the McGonigals should have been allowed to rely on the doctrine of res ipsa loquitur, which allows negligence to be inferred from the accident itself. The doctrine is applied in Texas if the plaintiff can show that (1) the character and the circumstances attending the accident lead reasonably to the belief that in the absence of negligence the accident would not have occurred; and (2) the thing or product which caused the injury is shown to have been under the management and control of the alleged wrongdoer. Marathon Oil Co. v. Sterner, 632 S.W.2d 571, 573 (Tex.1982). We determined that the McGonigals had established this dual showing. D & Z did not contest the McGonigals' assertion that the instrumentality was under its control. Moreover, the McGonigals had offered sufficient evidence in the form of expert testimony that the defective fuse would have been detected absent negligence in D & Z's x-ray inspection. McGonigal I, supra, 788 F.2d at 326-27. We, therefore, remanded for a new trial on negligence. The jury in the second trial found D & Z negligent. Damages were awarded to the McGonigals in the amount of $954,772.27.
 
 
 6
 D & Z appeals from the judgment on several grounds. First, it claims immunity as a government contractor. It also claims that the trial court abused its discretion by admitting evidence of other grenade accidents and of defective fuses found in other grenade lots. In addition, D & Z claims that contrary to our holding in McGonigal I, the case should not have been submitted to the jury on res ipsa loquitur. Finally, it claims that the district court's charge to the jury was misleading, and that the case was implicitly tried on a theory of strict liability. We consider each assertion.
 
 II. Government Contractor Defense
 
 7
 The Supreme Court recently held that the government contractor's defense extends government immunity to military contractors in cases involving design defects. Boyle v. United Technologies Corp., --- U.S. ---, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). The opinion does not change the law in this and other Circuits, except to reject the ideological basis for contractor immunity based upon the Feres doctrine (Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). See Boyle supra, at --- - ---, 108 S.Ct. at 2517-18. Hence, it remains the law of this Circuit that military contractor immunity does not apply in cases of defective manufacture: "federal law provides no defense to the military contractor that mismanufactures military equipment ...." Bynum v. FMC Corp., 770 F.2d 556, 573 n. 21, 574 (5th Cir.1985).
 
 
 8
 The McGonigals did not allege defective design against D & Z. Rather, they proceeded at trial solely on a theory of negligent manufacture. D & Z's job was to x-ray each fuse and eliminate all that were defective. This procedure was referred to by the parties as the "100% x-ray" procedure. The jury found that D & Z was negligent in carrying out this x-ray function and that D & Z's negligence allowed the defective fuse to reach and injure the McGonigals. In effect, the jury found that D & Z was not performing in compliance with government specifications. The jury finding removes any protection available under military contractor immunity. Bynum, supra at 574 (military contractor must show that defective equipment conformed to reasonably precise government specifications). The government contractor's defense does not apply in this case.
 
 
 9
 III. Evidence of Other Grenade Accidents and of Defective Fuses From Other Grenade Lots
 
 
 10
 We review district court decisions on the admission or rejection of evidence under an abuse of discretion standard. Jones & Laughlin Steel Corp. v. Matherne, 348 F.2d 394 (5th Cir.1965). D & Z claims the district court abused its discretion by admitting evidence of other defective fuses and other grenade accidents. The McGonigals introduced evidence of two fuses with short delay times (2.47 and 1.27 seconds instead of the usual 5 seconds) which had passed through x-ray procedures. The fuse with the 2.47 time had been x-rayed by D & Z. The 1.27 second fuse was not x-rayed by D & Z but did pass through a similar x-ray procedure. The McGonigals also introduced evidence of two premature-detonation grenade accidents which had occurred at Fort Quantico and Fort Jackson.[2] Neither of those accidents involved grenades assembled or x-rayed by D & Z, but both had passed through 100% x-ray procedures.
 
 
 11
 D & Z argues that the district court erred in admitting this evidence, which it considers to be irrelevant and prejudicial. It claims that the party seeking to introduce evidence of prior accidents or prior failures as proof of the harmful tendencies of a product must show closely similar circumstances between the event involved in the case and the earlier instances. Jackson v. Firestone Tire & Rubber Co., supra, 788 F.2d 1070, 1082-83 (5th Cir.1986); Ramos v. Liberty Mutual Insurance Co., 615 F.2d 334, 338-39 (5th Cir.1980). The McGonigals claim that evidence of other short fuses and grenade accidents was relevant and admissible to show the degree of danger involved in grenade manufacture and assembly.
 
 
 12
 Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Even relevant evidence can be excluded if the court determines that its potential for prejudicial or inflammatory effects upon the jury outweighs the likely probative value of the evidence. Fed.R.Evid. 403; Jackson, supra, 788 F.2d at 1075. Trial courts are given broad discretion in determining potential prejudice, as in other evidentiary matters. Ramos, supra, 615 F.2d at 340.
 
 
 13
 In Jackson, we relaxed the requirement of similarity for introducing evidence of other accidents in negligence cases: "For purposes of proving other accidents in order to show defendants' awareness of a dangerous condition, the rule requiring substantial similarity of those accidents to the accident at issue should be relaxed ... [A]ny differences in the circumstances surrounding these occurrences fall merely to the weight to be given the evidence." Jackson, supra, at 1083. Even under this relaxed requirement of similarity, however, evidence that grenades that explode prematurely are dangerous adds nothing to the obvious. Grenades are designed to kill and maim. Every juror knew this. The issue in this case was whether D & Z was negligent either because the x-ray procedure was not properly administered or because somehow a grenade was shipped without being x-rayed.
 
 
 14
 The evidence that another grenade, assembled and x-rayed by D & Z, had exploded prematurely was reasonably probative of the plaintiff's contention that D & Z was negligent in approving grenades with short fuses. But evidence that a grenade, assembled by another firm, had a short fuse does not appear reasonably probative of the charge that D & Z was negligent, and it is difficult to see any probative value in the evidence of the other two premature explosions. The plaintiffs contend that the evidence tended to show that the procedure was not 100% effective. But the plaintiffs were not challenging the procedure that the government prescribed. Instead they contended that D & Z was negligent in carrying out the prescribed procedure, in failing to perform the inspections with due care. That other contractors were negligent had no tendency to prove negligence on the part of D & Z.
 
 
 15
 Nonetheless, considering all of the evidence, we do not perceive any serious prejudice resulting from the admission of evidence of these three episodes. The jury was made fully aware that D & Z had not assembled three of the four other faulty grenades. We conclude that, while the district court should not have admitted evidence of the two early grenade detonations and of one of the two defective fuses, its admission was harmless error. Fed.R.Evid. 103(a).
 
 IV. Res Ipsa Loquitur
 
 16
 D & Z claims that the district court erred in submitting this case to the jury on res ipsa loquitur. It argues that the McGonigals failed to meet the requirements of res ipsa set out in Marathon Oil, supra, at 573. D & Z also claims that its presentation of rebuttal evidence destroyed any res ipsa presumption of negligence.[3]
 
 
 17
 For the purposes of this case, the entire res ipsa issue was decided in McGonigal I. We are bound by the law of the case, which states:
 
 
 18
 The McGonigals are not required to eliminate with certainty all possible non-negligent causes of the grenade's premature explosion. They need only present evidence from which reasonable persons could say that on the whole it is more likely than not that Day & Zimmermann's negligence was the cause of the accident. Since the parties do not dispute Day & Zimmermann's management and control over the grenade and the McGonigals' expert witness's testimony can reasonably be interpreted to show that in the absence of negligence a defective grenade could be detected by x-ray inspection, the McGonigals established both of the prerequisites for the application of the doctrine of res ipsa loquitur. Moreover, Day & Zimmermann failed to rebut the McGonigals' res ipsa loquitur claims by conclusively establishing that this accident occurred in the absence of negligence. Under these circumstances, the district court erred in granting Day & Zimmermann a directed verdict instead of submitting the case to the jury for a determination of whether Day & Zimmermann was negligent in inspecting the grenades.
 
 
 19
 McGonigal I, supra, at 327-28. We thus find that the district court did not err in submitting this case to the jury on res ipsa loquitur.
 
 V. Misleading Jury Instruction
 
 20
 D & Z's final claim is that the district court erred by giving misleading instructions to the jury. It argues that the definition of negligence contained in the court's charge confused the jury by stating that D & Z could be negligent "in placing a defective grenade in the stream of commerce." D & Z claims that the phrase "stream of commerce" evokes a strict liability standard.
 
 
 21
 The test for whether a jury instruction was improper is not whether the charge was faultless, but whether the jury was misled and unable to understand the issues. Borel v. Fibreboard, 493 F.2d 1076 (5th Cir.1973). We consider the charge as a whole. Id. at 1100. "If the charge in general correctly instructs, then even though a portion is technically imperfect, no harmful error is committed." Troutman v. Southern Railway Co., 441 F.2d 586 (5th Cir.), cert. denied, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971). Following these guidelines we find no reversible error in the instruction.
 
 
 22
 Although "stream of commerce" is often used in strict liability cases, it clearly does not have such a specific meaning that inclusion of the term in the charge leads a jury to believe strict liability controls. The district court's instructions to the jury explained negligence, plaintiff's burden of proof, the duty of care required, proximate cause, and res ipsa loquitur. The district court also described the McGonigals' contentions, as follows:
 
 
 23
 In this case, the plaintiff claims--the plaintiffs claim that the defendant was negligent and that such negligence was a proximate cause of the damages sustained by the plaintiffs. Specifically, plaintiffs claim that defendant Day & Zimmermann was negligent in failing to properly x-ray the critically defective M213 fuse in question, in failing to detect the critically defective M213 fuse that was received from Gearhart, and failing to provide enough time for the x-ray readers to inspect x-rays of fuse assembled, and in assembling a critically defective fuse into the hand grenade in question.... "Negligence" is the failure to use reasonable care.
 
 
 24
 We find that inclusion of the phrase "stream of commerce" in the charge was not misleading. "Stream of commerce," in and of itself, does not implicate strict liability as opposed to negligence. It merely refers to a manufacturer moving goods through commerce to the consumer.
 
 
 25
 A related claim brought by D & Z is that the McGonigals' case was tried implicitly on the theory of strict liability, instead of on negligence as this Court ordered in McGonigal I. There is a considerable similarity between the theories of negligent assembly of an explosive relying upon res ipsa loquitur and strict liability for a defective explosive. The reason for this is well and properly explained by the district judge's charge to the jury, which stated: "Negligence in the production of a high explosive grenade here in question means failure to use a high degree of care." It is not at all surprising that the trial of a case involving a high degree of care resembles that of a strict product liability case. But the McGonigals' trial is not flawed, because the judge made clear that negligence had to be found by the jury for D & Z to be held liable.
 
 VI. Conclusion
 
 26
 We find no reversible error in the district court's decision. The government contractor's defense does not apply in this case, because no design defect is involved. The admission of evidence of other accidents and other fuses was harmless error. The law of the case in McGonigal I establishes the propriety of application of res ipsa loquitur in this case. And finally, inclusion of the phrase "stream of commerce" in the jury instruction is not misleading; it is a neutral phrase properly used under both negligence and strict liability theories of liability.
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 The amount in controversy exceeds $10,000. At the time of filing, the plaintiffs were all residents of North Carolina. D & Z is incorporated under the laws of Maryland. Pengo and Gearhart are Texas corporations
 
 
 [2]
 One of the accidents was said in testimony to have resulted from improper mixing in manufacture of the delay mix, causing the delay column to burn quickly. The other accident was described merely as "premature detonation."
 
 
 [3]
 The precise effect of rebuttal evidence upon a res ipsa plaintiff is unclear under Texas law. Appellants D & Z claim that the presentation of any exculpatory evidence causes the res ipsa loquitur presumption to vanish and requires the plaintiff to produce direct evidence of negligence or lose on directed verdict. O'Day v. Sakowitz Bros., 462 S.W.2d 119, 127 (Tex.Civ.App.--Houston 1st, 1970, writ ref'd n.r.e.). Texas authority also points to the contrary, holding that res ipsa loquitur, even when rebutted, presents a jury issue. Texas & Pac. Ry. Co. v. Cassaday, 148 S.W.2d 471, 473 (Tex.Civ.App.1941, writ dism. judg. cor.). See also Mobile Chemical Co. v. Bell, 517 S.W.2d 245, 251 (Tex.1974) ("the [res ipsa ] plaintiff can survive no-evidence procedural challenges--he has produced some evidence of the defendant's negligence.... He is in the same position as any other plaintiff who has made out a case for the jury.")